[Civ. No. 8760.    Third Dist.    Apr. 2, 1956.]

THE STATE OF CALIFORNIA, ex rel. STATE PUBLIC
WORKS BOARD, Appellant, v. WESTOVER COM-
PANY (a Corporation) et al., Respondents.

Edmund G. Brown, Attorney General, Thomas W. Martin, Chief Assistant Attorney General, Walter S. Rountree, Assistant Attorney General, and Raymond H. Williamson, Deputy Attorney General, for Appellant.

Harold W. Kennedy, County Counsel (Los Angeles), Baldo M. Kristovich, Deputy County Counsel, Ray T. Sullivan, Jr., County Counsel (Riverside), Leo A. Deegan, Deputy County Counsel, Jean F. DuPaul, City Attorney (San Diego), James Don Keller, District Attorney (San Diego), Robert G. Berrey,

Deputy District Attorney, Robert E. Reed, Harry S. Fenton and Emerson W. Rhyner as Amici Curiae on behalf of Appellant.

C. Ray Robinson, D. Oliver Germino and William B. Boone for Respondents.

VAN DYKE, P. J.—This is an appeal from an order of the trial court denying a motion to tax costs and awarding to respondents $150,000 for attorneys' fees and $2,000 for the services of four expert witnesses in a condemnation action which the appellant state abandoned after the trial court sitting without a jury had assessed damages for the proposed taking in the amount of $1,516,312.25. Upon the filing of notice of abandonment pursuant to the code the defendants in condemnation filed a cost bill pursuant to section 1255a of the Code of Civil Procedure claiming that they were entitled to recover as costs the sums which, after hearing, the court allowed them.

Appellant contends that the order denying its motion to tax costs should be reversed upon the ground that there has been a plain and palpable abuse of discretion by the trial court in making the allowances for attorneys' fees and expert witness fees. Before discussing the merits, we think it well to refer to the test applicable on appeal in such a case as laid down in existing case law concerning which the parties are not in dispute. We quote the following from *County of Riverside* v. *Brown,* 30 Cal.App.2d 747, 749-750 [87 P.2d 60] :

"Section 1255a of the Code of Civil Procedure provides that in cases of this kind where the action is discontinued the defendants shall be allowed a reasonable fee for the services of their attorney. What is a reasonable fee for such services is first committed to the sound discretion of the trial judge. An appellate court can only interfere with the decision of the trial court as to what constitutes reasonable attorney's fees where there has been a plain and palpable abuse of discretion. [Citing cases, including *City of Los Angeles* v. *Los Angeles-Inyo Farms Co.,* 134 Cal.App. 268 (25 P.2d 224).]

"It is well established in this state that, as held in *Spencer* v. *Collins,* 156 Cal. 298 [104 P. 320, 20 Ann.Cas. 49] : 'The value of attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the extent and nature of such services, its own experience fur-

nishes it with every element necessary to fix their value.' . . .

. . . . . . . . . . . . . . . . .

" 'We are not at liberty to convert this appeal into a trial de novo.' (*Los Angeles* v. *Los Angeles-Inyo Farms Co., supra.*) "

We quote the following from 6 California Jurisprudence 2d, section 181:

"What constitutes a reasonable fee in a particular case depends on various factors, such as the nature of the litigation; its importance to the parties; its difficulty; the time consumed; the overhead expense of the attorney; the skill required, the skill employed, and the attention given; the attorney's standing in the profession; the success or failure of the attorney's efforts; . . .; and the attorney's age and experience in the type of work for which he claims compensation. . . .

"A determination of a reasonable fee is not likely to be changed on appeal, unless a gross abuse of discretion is shown."

■ It is apparent from the case law that the burden of one who appeals from a trial court's determination of what constitutes a reasonable fee is much heavier than when in the trial of that issue before the trial court the attempt is made to fix the fee at less than that fixed at the close of the hearing.

■ We are not given authority to fix a reasonable fee on appeal. As said in the case from which we have quoted, the appeal is not a trial de novo of the basic issue of reasonableness of the fee allowed. What constitutes a reasonable fee is and ought to be confided in the first instance to the trier of fact, the court called upon to make the allowance, and it matters not whether an appellate court sitting in review of the trial court's order finds itself in agreement with or differing from the amount so fixed. We can inquire only as to whether or not the sum allowed is so exorbitant that its allowance constitutes a palpable and plain abuse of discretion.

■ Turning now to the record, we find that, speaking generally, there was here no mere casual resolution of the issue presented to the trial court. On the contrary, both sides fairly, fully and with frank antagonism fought the issue out. The court which fixed the fee not only presided at the trial of the action, but also considered and ruled upon the numerous and complex legal issues tendered while the pleadings were being settled. To the fixing of this fee, therefore, the trial court brought personal knowledge of the extent and value of the work done by respondents' attorneys which cannot be

disclosed by the record and equally cannot be ignored. ▮ The record itself discloses the following: The purpose of the condemnation was to obtain an area of land fitted for and to be used for the preservation of game, notably migratory wild fowl. A part of the purpose to be served, although it may have been a minor part, was, after there had been furnished for migratory fowl a refuge, feeding and resting area, to permit licensed hunters to hunt the area. The resolution whereby the Wildlife Conservation Board, meeting on May 18, 1950, declared that the area here in question should be taken for said purposes, stated that the proposed taking of a previously favored area had developed such landowner opposition as to make desirable the selection of another site and said that a desirable alternate had been located on San Luis Island involving a tract of 6,678 acres offered, said the resolution, for a ''willing sale.'' (That the tract was offered for willing sale turned out to be an unwarranted assumption.) The resolution continued with the description of the area which later became the subject of these condemnation proceedings, asserting that soil surveys show it to be largely alkali free, and of poor to fair agricultural quality according to the Storie rating; that 941 acres lay within a water service district where deliveries averaged about 4 feet per acre annually; that the remaining 5,737 acres were outside any water service, but that the owner had been granted a permit by the Division of Water Resources to divert continuously from Salt Slough 71.7 cubic feet per second; that the authorized diversion, fully exploited, would provide 52,341 acre feet or 7.8 feet per acre annually for the entire tract, which was more than necessary for efficient operation of the area for waterfowl. The resolution contained an estimate of the board that the grand total of the cost for the project would be $699,400. It appears that not only were the owners unwilling to sell their land, but strenuously opposed its taking at any price and retained counsel, whose fees are here in question, to resist in all proper ways such taking and if that could not be avoided then to obtain the best available price for the property. The legislation under which the state was acting was new, that is, the set-up of a state agency of the sort here involved and the granting to it of the power of eminent domain presented questions unique insofar as the laws of this state were concerned. The constitutionality of the legislation was immediately and seriously challenged. Included in this challenge was

the lesser challenge of the right of the state to condemn anything more than the surface rights, it being the contention of the owners that there was involved in the taking subsurface mineral rights of great potential value and since the state sought to take the title in fee, there was controversy over its right to do so. There were also controversies involving the extent and validity of the water rights through which the subject land was being supplied with water, and among these controversies was that of whether or not the possession and use of the appropriative permit referred to could be considered as a factor by those who testified concerning the value of the land. These matters and others, which we need not here mention, were presented from the beginning. Demurrers were filed to the complaint and in support of and in opposition to these contentions a substantial amount of investigation was made by respondents' attorneys and extensive briefs were filed. The first demurrers were sustained, amendment was allowed, the issues were again presented and demurrers over-ruled. This, of course, did not remove from the case the contentions made, and the answer filed renewed and reasserted substantially all of the contentions litigated when the demurrers were heard, the trial judge in respect of some of them announcing that he considered factual proof necessary to their determination. The case moved on for trial before the court sitting without a jury, a jury having been waived. After trial the court found the value of the land to be the sum hereinbefore stated, which sum exceeded by more than 100 per cent the best offer for the land the state had made prior to trial, that offer being $675,000. At the trial the issue of the right of the state to take the subsurface rights was resolved by stipulation, whereby only the surface rights were to be taken and there was to be reserved to the owners all minerals, oils and hydrocarbon substances lying beneath the surface, with the right to enter upon the land and mine and extract the same. What the state initially, therefore, sought to take and for which it made its offer was substantially lessened before the trial court fixed the value of the surface rights at $1,516,312.25. Something more than two years had passed between the filing of the action and the entry of judgment fixing the value. There was much evidence taken when the court heard the motion of the state to tax costs as to the extent of the efforts of respondents' attorneys in preparation for trial and in trial. A number of attorneys, qualifying as expert witnesses, testified in respondents' behalf,

and in doing so commented on the contents of the record submitted to them, and to the trial court. Parts of their testimony will well serve to illustrate the nature and extent of the factors going to establish reasonable attorneys' fees which the record presented.

Mr. Frank B. Belcher, an attorney at law practicing since 1914, a senior member of the firm of Belcher, Kearney & Fargo of Los Angeles, a member of the State Board of Bar Governors for three years, President of the State Bar for one year, a member of the Board of Bar Examiners for five years, and of various State Bar committees, testified as follows: He had engaged in general civil practice, devoting his time largely to the field of litigation, having tried many cases over a long period of time with his attention devoted for the last 10 years mainly to specialized types of litigation, usually involving issues of considerable importance. Mr. Belcher listed some of his regular clients, the list justifying the conclusion that his standing and prestige before the bar and with those who sought lawyers' services were high. He said that, in preparing to testify concerning the value of the services of C. Ray Robinson, D. Oliver Germino and William Boone, respondents' attorneys, he had read the transcript of the trial proceedings, had read the deposition of C. Ray Robinson taken in connection with the hearing to tax costs and the deposition of Mr. Boone on the same matter, had read the depositions of the three appraisers who testified on values, examined another file containing copies of the pleadings in the case and memorandums of authority filed in support of demurrers, with the various briefs in support of and in opposition thereto. He said he had spent several days in studyng the record; that in his opinion the reasonable value of the attorneys' services would run from $150,000 to $200,000. On cross-examination he explained that in arriving at these figures he had considered the following factors: The matter had been pending in counsel's offices for several years; that the case was a very substantial one, involving nearly 7,000 acres of land that were being condemned; that there were many problems in connection with the condemnation proceeding and the case was complicated with difficult questions of law involved. He stated he considered the skill exhibited by counsel and the skill normally required to successfully handle a case of that kind; he considered the offer of settlement before trial and the results obtained at the trial; he considered to some extent the

earnings which Mr. Robinson customarily made in practice; he considered the amount of time that he thought could properly have been actually devoted to the litigation. He attempted, he said, no specification of actual time involved in working on the case by any of the counsel for respondents, but knew from his experience that many, many details had to be investigated, and that considerable time had to be spent with the appraisers and other witnesses and the attorneys must achieve a complete and thorough knowledge of the property involved; he considered from his own knowledge that adequate and proper preparation and presentation of the case took an extended amount of time, the record indicating that many, many conferences and many examinations of the property would be required. He said he attached no great importance to the element of time, deeming it a minor element in cases such as this; that he believed the major consideration in the earning of fees was the result obtained and that the comparison of the state's offer and the court's judgment led him to assume that counsel had obtained a "brilliant" result; that he believed people hired lawyers to get results and that when an excellent result was obtained the determination of fair compensation should be influenced thereby. He had considered that the owners had, during the trial, been permitted to reserve the mineral rights from condemnation. He concluded from his study of the record that one of the prime things the owners had desired to accomplish was to be allowed to retain their land free from condemnation and he attached some importance in that way to the fact the state, after trial, had elected not to take the land at the price fixed.

It appears from the record that the trial court could justifiably conclude that Mr. Robinson, in particular, and also Mr. Germino and Mr. Boone were attorneys of high standing and competence in the practice of their profession; that Mr. Germino had spent nearly 50 per cent of his time during the pendency of the action prior to trial in the handling of the issues presented and in the preparation for trial; that Mr. Boone had exhaustively and extensively investigated complex legal issues involved in the proceedings; that Mr. Robinson was an attorney of unusually large experience. It was shown that he maintained an organization with its home office in Merced, at which place he employed 11 attorneys and 18 secretaries and that the expense of maintaining his organization amounted to $300,000 per year.

One of the witnesses who testified that from his study of the

record and from his knowledge of the subject matter at issue the services rendered by the attorneys were worth the sum of $150,000 was M. Mitchell Bourquin, an attorney practicing in San Francisco, who for many years had represented the federal government in the conduct of many condemnation suits throughout the state arising out of the construction of federal works, such as Shasta Dam and related projects. He based his estimate of reasonable compensation on his experience in that type of litigation, upon his knowledge of the capacity of the trial attorneys for respondents and upon the record presented to him. He considered much the same factors as were considered by Mr. Belcher. Mr. Robinson and Judge Germino both testified as to the extent and character of services rendered and that the amount requested in the bill for costs, to wit, $150,000, was reasonable as fees for the attorneys of respondents. It is unnecessary to recite their testimony in detail.

For appellant three expert witnesses were sworn and testified. Mr. Edwin Sprague Pillsbury, practicing in San Francisco, an attorney of high standing and long experience, testified that fair compensation for respondents' attorneys would be the sum of $60,000. When asked for the basis of his opinion he said in part: "There are many factors to take into consideration in the difficult matter of fixing attorney's fees. It is not an easy matter, and reasonable minds can differ, and lawyers who have worked together side by side for many years can have different opinions on matters of this kind because there is no absolute rule." He stated that he had endeavored, through studying the record, to appraise the nature of the work undertaken, the time consumed by respondents' attorneys and the goals they were trying to reach. He understood that Mr. Robinson had instructions from his clients to prevent condemnation, if that was possible, and he took that to be the paramount objective; that Mr. Robinson had accomplished that result by various means; that he had tried to head off the condemnation in the first place; that after the suit was filed he had raised legal points supporting contentions in substance that this taking would not be justified by law; that he had done some excellent research, including analyses of cases from other jurisdictions; that he had raised technical points as to the authority of the officials who acted in the case to exercise the power of condemnation and that, as the witness put it, Mr. Robinson had, as a means of preventing the taking "threatened to, if there were a taking,

if the award under the lower court were made justifying a taking and fixing the value, he threatened to appeal that, . . . not only to the highest court of our land, but the Supreme Court of the United States, so he had a legal approach to the objective which he had in mind of saving this land for the client''; that he considered the other approach was to obtain the highest possible price for the land and in that respect respondents' attorneys had brought conviction to the court's mind through their witnesses and the court rendered an award of $1,516,312.25, some $640,000 in excess of what the state's witnesses had testified to; that he considered the attorneys had done a good job for their clients. Mr. Bestor Robinson testified as an expert witness for appellant and, without detailing either his qualifications, which were high, or the basis for his opinion, he estimated a reasonable fee to be $40,000. Mr. Francis C. Whelan, the third expert witness for appellant, a man of recognized ability, fixed the proper fee at $62,500.

When we consider the record in this case, the personal knowledge of the trial judge as to the extent and character of the services rendered by respondents' attorneys, the professional stature and qualifications of the expert witnesses and their serious approach to the problem presented, when we consider the importance of the issues involved and the correspondingly heavy responsibilities shouldered by counsel in such cases, when we consider the circumstances hereinbefore related concerning the valuation which the state sought to fix for the property taken, and the vastly greater value determined by the trial court, when we consider all the matters which we must on such an appeal as this, we are firmly convinced that appellant here has not borne its burden of showing the sum fixed by the trial court as reasonable attorneys' fees to be plainly and palpably an abuse of the broad discretion which the law vests in that tribunal. The amount ordered paid by the trial court must be accepted here as justified.

■ Little more need be said in the determination of this appeal. Appellant contends that the trial court's allowance of $500 each for four expert witnesses who testified for respondents constitutes an unreasonable and an excessive allowance, but the record will not support the contention. It appears these witnesses, their number not being excessive in view of the magnitude of the issues involved, were men of substance and experience and especially skilled in the subject of their testimony; that they had spent considerable time in prepara-

tion to testify, in consultation with respondents' attorneys and in studies of the subject property and the surrounding property, including attention paid to past sales of land in the general vicinity. They attended and testified at the trial. The allowance of $500 each cannot be successfully attacked as unreasonable, or as excessive, and, indeed, appears to be quite reasonable.

Finally, appellant contends for reversal on the ground that the trial court failed to make findings of fact in denying appellant's motion to tax costs. Appellant claims that such findings, although not expressly required, are impliedly required by section 1255a of the Code of Civil Procedure, but no authorities so construing the section are cited. We find no merit in the contention. The Code of Civil Procedure does require that findings, unless the same are waived, shall be made responsive to the issues presented by the pleadings and presented to a court in the trial of a case, but there is no requirement that such findings be made in a proceeding to tax costs. Since the Legislature has not seen fit to require it, we see no reason why the case law should do so.

The order appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied April 27, 1956, and appellant's petition for a hearing by the Supreme Court was denied May 29, 1956. Gibson, C. J., and Shenk, J., were of the opinion that the petition should be granted.