[Civ. No. 26573. Second Dist., Div. One. Mar. 11, 1963.]

PORT SAN LUIS HARBOR DISTRICT, Plaintiff and Appellant, v. PORT SAN LUIS TRANSPORTATION COMPANY, Defendant and Respondent.

Anson, Gleaves & Larson and Milnor E. Gleaves for Plaintiff and Appellant.

Robert W. Tallman and Bancroft, Avery & McAlister for Defendant and Respondent.

WOOD, P. J.—In this condemnation action, after a verdict was returned awarding defendant $707,780 as compensation and damages, the plaintiff abandoned the proceeding and, upon its motion, judgment of dismissal was entered.

Defendant filed its memorandum of costs and disbursements in the amount of $153,565.43, which included $125,-000 as attorneys' fees.

After a hearing upon plaintiff's motion to tax costs, an order was made awarding costs and disbursements as stated in the memorandum, and amending the judgment of dis-

missal to include such award.

Plaintiff appeals from that order and the portion of the judgment of dismissal awarding such amount as costs and disbursements.

Plaintiff is a harbor district in the Avila area of San Luis Obispo County. It has the power to exercise the right of eminent domain in the same manner as a municipal corporation. (Harb. & Nav. Code, § 6076.) It sought to condemn, for harbor facilities, approximately 23 acres of defendant's land which is beach or bay frontage extending about 1½ miles in length.

Section 1255a of the Code of Civil Procedure provides, in part, that if a plaintiff abandons a condemnation proceeding, "a judgment shall be entered dismissing the proceeding and awarding the defendants their costs and disbursements, which shall include all necessary expenses incurred in preparing for trial and during trial and reasonable attorney fees. These costs and disbursements, including expenses and attorney fees, may be claimed in and by a cost bill, to be . . . filed and taxed as in civil actions. . . ."

Preparatory to the hearing on the motion to tax costs, the plaintiff took the deposition of Mr. Robert W. Tallman, one of the attorneys for defendant. The deposition consists of 190 pages of typewriting. Practically all of the deposition, beginning with page 13, is Mr. Tallman's reply to a request by plaintiff that he make a statement as to dates upon which he performed work in connection with the condemnation action, the hours he worked each day, and the work which he performed.

At the hearing of the motion to tax costs, before Judge Lyon who presided at the condemnation proceedings and trial, defendant introduced in evidence the deposition and the file of the action. Also, defendant presented testimony of Phillip T. Boyle, attorney at law, who was qualified to give an opinion as to the reasonable value of legal services in a condemnation action. He testified that, in his opinion, the reasonable value of the services rendered by defendant's attorneys was not less than $125,000. At that hearing, Mr. Richard F. Harris filed on behalf of plaintiff his affidavit with respect to services rendered by attorneys for defendant and with respect to other items in the cost bill. He stated in effect, among other things, in his affidavit that a substantial portion of the alleged services of Mr. Tallman pertained

to political conferences and activities which were not part of the preparation for the trial, and which were intended to harass the plaintiff, hamstring its development of the harbor, prevent the state, federal, and county governments from giving financial assistance to plaintiff, and cause newspapers to publish articles adverse to the harbor project. He also stated in his affidavit that in his opinion the reasonable value of the legal services rendered by the attorneys for defendant was $25,000. Thereupon, the attorneys for the parties submitted the motion without argument. As of that time, the judge had not read the deposition or the affidavit, and the matter was submitted for decision. The present attorneys for plaintiff were not its attorneys at that time.

One of appellant's contentions on appeal is that the court erred in awarding $125,000 as attorneys' fees. Appellant argues that uncontroverted evidence shows that a substantial part of the services upon which defendant's claim for attorneys' fees was based was not rendered in preparation for trial or during the trial; that the deposition of Mr. Tallman shows that the services rendered by him included hundreds of hours of legislative and administrative lobbying, the making and exploitation of political connections, and conferences with newspaper reporters, for the purpose of inducing the harbor commissioners to withdraw this action before trial. In connection with that argument, appellant refers to statements in Mr. Tallman's deposition to the effect: that he had conferences with several public officials, including state and federal legislators, and the foreman of the grand jury; that he had conferences with newspaper reporters; and that he attended meetings of the commissioners of this harbor district, the commissioners of the Small Crafts Harbor Commission, and the supervisors of San Luis Obispo County. Also in connection with that argument, appellant refers to statements in Mr. Harris' affidavit to the effect: that some of the conferences pertained to efforts to cause the state to withdraw a loan of $100,000 which had been made to plaintiff for the purpose of acquiring and developing defendant's property; that the appearances at meetings of the harbor commissioners (of this district) and the county supervisors pertained to fiscal and tax matters which were not related to the preparation for trial of the condemnation action. (Appellant states in its brief that no point is made as to the motives or good faith of any person so referred to, but it is as-

sumed for purposes of the appeal that the alleged efforts of defendant to block the condemnation prior to trial were for the sole purpose of retaining the property; however, since the right of the owner to recover attorneys' fees is limited by statute to services rendered in preparation for the trial and during the trial, it would be improper to consider such other activities in determining the fee.)

An issue in the action was whether the taking of property was for a public use. (See pretrial order and defendant's pretrial statement.) The resolution of the Board of Harbor Commissioners stated that the "public interest and necessity require the acquisition" of the "property for the construction of public improvements, to-wit: A harbor facility for said Port San Luis Harbor . . . including sufficient property . . . to construct improvements . . . necessary to such facility, together with a public road . . . over a portion of said property. . . ." As stated in *People* v. *Chevalier*, 52 Cal. 2d 299, 304 [340 P.2d 598], "The only limitations placed upon the exercise of the right of eminent domain by the California Constitution . . . and the United States Constitution . . . are that the taking be for a 'public use' and that 'just compensation' be paid for such taking. Each of these limitations creates a justiciable issue in eminent domain proceedings."

 The recitation in the resolution of the "public necessity" is conclusive evidence as to public necessity (see *People* v. *Chevalier, supra,* pp. 304-305) but, as above stated, there was an issue herein as to whether the taking was for "a public use." That issue was tried by Judge Lyon (without a jury) during a period of nine days. It seems that the issue as to public use was based, in part, on defendant's alleged information that the taking of defendant's property was intended "to eliminate an adverse property holding," and that the property would be turned over to private interests to develop and operate. It appears also that plaintiff had obtained a loan of $100,000 from the Small Crafts Harbor Commission, and that defendant was raising a question (under the issue of public use and under the motion for immediate possession) as to plaintiff's financial ability to develop the project. Due diligence in preparing for the trial of such issues might well require conferences, attendance at meetings, and inquiries, such as most of those which were indicated in Mr. Tallman's deposition. At the close of the nine-day trial of the issue as to public use, the judge stated that the case

was unusually complex, and it involved questions as to what evidence could be received on the issue of public use, what were the intentions of the harbor commissioners, and whether they intended in good faith to devote the property to public use. Three hearings were held on plaintiff's motion for an order for immediate possession, which motion defendant's counsel successfully opposed. A two-day hearing was held with reference to legal questions on the severance issue. The main trial, before the jury, proceeded for 14 days. The verdict was for $707,780, which was about 28 times the amount which plaintiff proposed as a security bond for immediate possession.

When Mr. Tallman was retained by defendant, they agreed that he would be paid upon a time basis plus a reasonable fee on the basis of work accomplished. When the matter was concluded, they agreed that $125,000 was a reasonable fee.

 "The determination of what is a reasonable fee is a question of fact that rests within the discretion of the trial court. . . . The fees recoverable must be a reasonable incident of the suit. . . ." (*La Mesa-Spring Valley School Dist.* v. *Otsuka*, 57 Cal.2d 309, 316 [19 Cal.Rptr. 479, 369 P.2d 7].) It was stated further in the case last cited, at page 318: "It is for the trial court to determine what services were rendered in preparation for trial and the reasonable value of such services." In the present case, as above stated, the judge who presided at the hearing of the motion to tax costs also presided at various hearings and at the trial. In *State of California* v. *Westover Co.*, 140 Cal.App.2d 447, 450 [295 P.2d 96], it was said: "The court which fixed the fee not only presided at the trial of the action, but also considered and ruled upon the numerous and complex legal issues tendered while the pleadings were being settled. To the fixing of this fee, therefore, the trial court brought personal knowledge of the extend and value of the work done by respondents' attorneys which cannot be disclosed by the record and equally cannot be ignored." The deposition of Mr. Tallman states details regarding legal services rendered by him and other attorneys on behalf of defendant. It is to be noted that, in his deposition, he was requested by plaintiff to make a statement as to work he performed in connection with the condemnation action. In compliance with that general request he made a statement consisting of 177 pages of

typewriting, which statement was based upon or made by referring to his daily written summary of work performed and time devoted thereto. Apparently his statement, made pursuant to such general request or question, was intended as an all-inclusive reply as to matters which had some connection with the action even though they might not be a part of the preparation for trial. Some of the work referred to therein pertained to a taxpayer's suit regarding the harbor development, but Mr. Tallman said that no charge therefor was included in the claim for attorneys' fees in the condemnation action. It would seem that some of the other matters referred to therein, such as a conference with the foreman of the grand jury and conferences regarding proposed new legislation on the subject of condemnation, were not services in preparation for trial. If the judge regarded some of such matters as not being services in preparation for the trial, it might well be that he found that those services were not a substantial portion of the services rendered but were comparatively inconsequential and negligible in value and should be ignored in determining the reasonable value of legal services. It cannot properly be concluded that the court awarded attorneys' fees for services which were not rendered in preparation for the trial. The court did not abuse its discretion in awarding $125,000 as attorneys' fees.

 Appellant also contends that the court erred in awarding said amount as attorneys' fees for the reason that a substantial portion of the legal services, for which fees were claimed, were performed by Mr. Tallman while he was an employee of the law firm of Chickering & Gregory, and that firm was not listed in the cost bill as a firm to which defendant was obligated for attorneys' fees. With respect to attorneys' fees the cost bill states: ''Attorneys' Fees as Provided for by CCP 1255a: Bancroft, Avery & McAlister, Robert W. Tallman; Overton, Lyman & Prince, Donald Ford: Bernard E. Witkin; Thomas B. Adams; Harry A. Jackson; Roland Iverson, $125,000.00.'' Mr. Tallman was an attorney of record for defendant during the litigation. In the beginning he was employed by or was associated with the firm of Chickering & Gregory, which was also of record as counsel for defendant. Later, he became associated with the firm of Bancroft, Avery & McAlister, and that firm was substituted in place of Chickering & Gregory. It does not appear that this asserted point (re not listing Chickering & Gregory in the

cost bill) was specifically raised in the trial court. Mr. Tallman's deposition states that he employed the other attorneys who rendered services in the action; that he took full responsibility for the preparation and conduct of the trial; that the amount due to Bancroft, Avery & McAlister would be $125,000 minus the amounts payable to the other attorneys whose names are listed in the cost bill. Under said section 1255a, attorneys' fees are awarded to the defendant as a part of his costs and disbursements. The award is not to the attorney or attorneys for the defendant. The court determined that defendant was entitled to $125,000 with which to pay attorneys' fees. It does not appear that Chickering & Gregory claimed a fee. This contention is not sustainable.

Appellant contends further that the court erred in allowing $1,284.13 for services of Engineering Services Corporation, which amount was claimed in the cost bill as an expense in preparing for trial. Mr. Harris' affidavit states that the services were rendered and paid for in 1959 before the action was commenced and were not rendered in preparation for the trial. Appellant has not included a reporter's transcript of the trial as a part of the record on appeal, and the record is not adequate to describe the services and the circumstances under which they were rendered. The verified cost bill is prima facie evidence that the services were necessarily incurred. (See *Haydel* v. *Morton*, 18 Cal.App.2d 695, 696 [64 P.2d 954].) All intendments are in favor of the order of the trial court. If the services were rendered before the action was commenced, that fact alone would not be a basis for disallowing the claim for the services. (*La Mesa-Spring Valley School Dist.* v. *Otsuka, supra,* 57 Cal.2d 309, 316 [19 Cal.Rptr. 479, 369 P.2d 7].) This contention is not sustainable.

Appellant also contends that the court erred in allowing $3,953.95 for services of Dean Kingman Company, which amount was claimed in the cost bill as an expense in preparing for trial. Mr. Harris' affidavit states that the services were rendered and paid for before the action was commenced, were in connection with repairs to the wharf and bridges on defendant's property, and were not in preparation for the trial. The deposition of Mr. Tallman states that said company (engineering company) was retained to study the wharf, bridge, and other improvements on the property; he was paid $1,263.43 in July 1959, and $3,744.64 in Decem-

ber 1959. In that deposition there are several references to the services of Mr. Kingman, indicating that his report was used in opposing the motion for immediate possession, and used in connection with the appraisals. Statements made hereinabove regarding the absence of an adequate record, and regarding presumptions and the fact that the services were rendered before the action was commenced, are applicable here. This contention is not sustainable.

Appellant contends further that the court erred in allowing $7,294.59 for services to Charles Shattuck (appraiser) in preparation for the trial, and in allowing an additional amount of $128 as witness fees and mileage for the five days Mr. Shattuck was in court. Appellant argues that the total of these amounts was $1,010 in excess of the amount defendant was obligated to pay. Mr. Tallman's deposition states that Mr. Shattuck was paid $2,000 for his preliminary report, $4,000 for his final report, and thereafter at the rate of $250 a day, plus expenses; he was paid $6,412.59 on August 7, 1961 (after the trial) and he had received, at least, $2,000 prior to that date. The court could reasonably conclude that he had been paid approximately $8,412.59, and that the portion of said amount above the $7,294.59 claimed in the cost bill was for services as an expert witness (which services at the time of trial were not allowable as costs). The court did not err in allowing said items of the cost bill.

Appellant also contends that the court erred in allowing $1,400.43 for services of Charles Anders (appraiser) in preparation for the trial. Appellant argues that said amount was $200.43 in excess of the amount defendant was obligated to pay. Mr. Tallman's deposition states that he retained Mr. Anders on the basis of $100 a day, plus his expenses, but with a maximum fee of $1,200; Mr. Anders presented a bill for 22 days of service; he was paid $1,400.43. The court could reasonably conclude that the said amount was in payment of the maximum fee of $1,200 and expenses of $200.03. The court did not err in allowing said item of the cost bill.

Another contention of appellant is that an item of $405.30 claimed as the cost of taking depositions on February 2, 1961, was improper because no deposition was taken on that day. Mr. Harris' affidavit shows that depositions were taken on February 11, 1961. It does not appear that any prejudice resulted by reason of the alleged error in referring to

February 2 instead of February 11. There is no merit to this contention.

Another contention is that an item of $309.01, claimed for expenses incurred in taking the above mentioned depositions, was improper because it appears from the affidavit of Mr. Tallman that such expense was included in the charge for attorneys' fees. This alleged point was not raised in the trial court. The court did not err in allowing this item of the cost bill.

Another contention is that the court should not have allowed an item of $10.25 for serving subpoenas. Appellant's argument, with respect to this, is that the witnesses demanded witness fees at the time of service, and the fees were not paid. The witnesses testified at the trial. There is no merit to this contention.

The order and the portion of the judgment appealed from are affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court Court was denied May 8, 1963.