[Civ. No. 40674. First Dist., Div. Two. Oct. 23, 1978.]

LAKE COUNTY SANITATION DISTRICT, Plaintiff and Appellant, v. ROBERT SCHULTZ, SR., et al., Defendants and Appellants.

## COUNSEL

Charles D. Haughton, County Counsel, and Arthur H. Mann, Deputy County Counsel, for Plaintiff and Appellant.

Fitzgerald, Berg & Edgar, Herman H. Fitzgerald and William R. Edgar for Defendants and Appellants.

## OPINION

**TAYLOR, P. J.**—The property owners, Robert Schultz, Sr., and Robert Schultz, Jr. (Schultz), appeal from an order after judgment granting reimbursement for certain litigation expenses pursuant to former Code of Civil Procedure section 1249.3, incurred when Schultz went to trial on the issue of valuation of their property condemned by Lake County Sanitation District, a subdivision of the County of Lake (Lake County). On their appeal, Schultz contend that the trial court erred by limiting the recovery of their litigation expenses to those incurred within 30 days before the trial; Schultz also seek attorney fees and costs on this appeal. Lake County on its cross-appeal argues that the court erred in finding that its superseded offer of $165,000 constituted a concession that its final offer of $125,875 was unreasonable, and that since no substantial evidence supports the trial court's finding that its final offer for the Schultz property was unreasonable, no litigation expenses at all should have been awarded to Schultz. For the reasons set forth below, we have concluded that there is no merit to Lake County's cross-appeal and that the trial court erred in denying Schultz the litigation expenses sought herein.

The court found the pertinent facts as follows: Lake County filed its complaint on February 20, 1975. The trial date was finally set for March 29, 1976. The latest date which was at least 30 days prior to March 29, 1976, was February 27, 1976.

On March 1, 1976, pursuant to former Code of Civil Procedure section 1249.3, Schultz made their final demand of $210,000 for the property taken. This demand was filed later than 30 days prior to the date of the trial of this action, but since it was filed on the next court day following the 30th day prior to trial and since Lake County made no objection to its late filing and was, itself, tardy in filing its final offer, Schultz' filing of the demand on March 1, 1976, constituted substantial compliance with the requirement of former Code of Civil Procedure section 1249.3 that the demand be filed at least 30 days prior to the date of trial.

On March 3, 1976, pursuant to the statute, Lake County filed its final offer of $125,875. On March 24, 1976, Schultz filed a superseded demand for $180,000. On March 24, 1976, Lake County filed its superseded offer of $165,000. On March 31, 1976, after a three-day jury trial, a verdict was entered finding the value of the property taken to be $186,650 and a judgment was entered on the verdict on April 8, 1976.

On April 27, 1976 (and within 30 days after the entry of the judgment), Schultz filed their instant motion for recovery of litigation expenses pursuant to former Code of Civil Procedure section 1249.3.

Lake County's final offer of $125,875 on March 3, 1976, viewed in the light of the verdict fixing the value of the property at $186,650, was unreasonable. The difference between the final offer and the verdict, which difference was $60,775, amounted to 33 percent of the verdict, or 48 percent of the final offer. Lake County's superseded offer of $165,000 made on the fifth day prior to trial constituted a concession that its final offer of $125,875 was unreasonable. Lake County's final offer was predicated upon valuation evidence which was received at the trial and which did not persuasively support the contention that the value of the property was $125,875. Lake County's evidence was based upon an investigation of the property and its value which was substantially deficient in its thoroughness and objectivity.

The final demand of $210,000 filed by Schultz on March 1, 1976, viewed in the light of the verdict fixing the value of the property at $186,650, was reasonable. The difference between the final demand and the verdict ($23,350) amounted to 12½ percent of the verdict or 11 percent of the final demand. Schultz' final demand of $210,000 was predicated upon valuation evidence which was received at the trial and which well supported the contention that the value of the property was

$210,000. Schultz' evidence was based upon an investigation of the property and its value which was thorough and reasonably objective.

Schultz' counsel was employed in December 1975, pursuant to a retainer agreement, by which counsel agreed to represent Schultz in this proceeding and Schultz agreed to pay counsel a fraction—one-third in the event of settlement prior to the assignment of a trial date; otherwise, 40 percent of the difference between Lake County's initial offer of $125,875 and the ultimate recovery. Pursuant to the terms of the retainer agreement, on February 27, 1976 (and on Mar. 3, 1976), the measure of compensation for Schultz' counsel had already become fixed at 40 percent of the difference between $125,875 and the ultimate recovery. After that date, Schultz did not become obligated to pay their counsel any greater proportion of the difference, notwithstanding it became necessary thereafter for counsel to expend a great deal of time and effort in the preparation and trial of the case. The value of the services performed by counsel after February 27, 1976 (and after Mar. 3, 1976) is substantial and constitutes the greatest part of all services performed by counsel on the case through the conclusion of the trial.

Pursuant to the terms of the retainer agreement, Schultz' counsel is entitled to a fee for his services amounting to $26,436.80, 40 percent of the sum of $60,775, the amount by which the ultimate recovery exceeded $125,875, plus $5,317, interest which accrued on that portion of the verdict award not deposited in court at the time possession was taken by Lake County. The services necessarily performed by Schultz' counsel through the trial had a reasonable value of $26,436.80.

The services performed by Schultz' counsel in the preparation and presentation of the instant motion for recovery of litigation expenses reasonably and necessarily included 91½ hours of his time, including research, briefing, motion drafting, travel, preparation of evidence and presentation of evidence and argument on the motion on two separate hearings. Seventy dollars per hour is a reasonable hourly charge for the services of Schultz' counsel.

Although the product of 91½ hours at $70 per hour amounts to $6,405, that sum does not reasonably represent either the value of counsel's services in presenting the motion or an appropriate allowance to be made to Schultz for such services for the reasons that: 1) much of the legal research done by counsel was on a point reasonably expected to recur in counsel's specialty practice of eminent domain and the benefit of the

research performed accrued not only to Schultz but to all of counsel's clients for whom a similar claim to litigation expense can be presented; and 2) the compensation which counsel has otherwise earned in this case for his services through the condemnation trial is substantial. The reasonable value of counsel's services in presenting the motion and a reasonable allowance to be made to Schultz is $1,200.

Schultz' appraiser, Dean Stahr, was employed by them in December 1974, prior to the commencement of this action. His assignment was to make a preliminary estimate of the value of the property taken in this action, for a fee of $1,000. By February 12, 1976, he had completed that assignment and had been paid $1,000, a figure that represents the reasonable value of his services performed prior to that date. On February 12, 1976, he was employed by Schultz to conduct an appraisal and to prepare to give trial testimony. After February 27, 1976, he conducted a competent appraisal, employing commonly accepted appraisal techniques and gave trial testimony which was valuable to Schultz and useful to the jury. The reasonable value of his services necessarily performed after February 27, 1976, and through the trial of the case, is $5,000. The services performed by Stahr in the presentation of this motion for recovery of litigation expenses reasonably and necessarily included his travel to the hearing and his testimony at the hearing and have a reasonable value of $200. In addition to the expenses incurred for their counsel and appraiser, Schultz incurred the expense of $28 for the filing fee paid to the clerk of the trial court upon filing their answer.

The court, however, concluded that: pursuant to former Code of Civil Procedure section 1249.3, Schultz were entitled to recover attorney fees and appraisal fees reasonably and necessarily incurred after February 27, 1976, in preparing for and conducting the condemnation trial, but are not entitled to recovery of any such fees incurred prior to February 27, 1976. The fee of Schultz' counsel for the preparation and trial of this action was incurred prior to February 27, 1976, and no part was incurred thereafter. Schultz are not entitled to recover any amount for attorney fees incurred in the preparation and trial of the condemnation case. Schultz are entitled to recover from Lake County the sum of $1,200 for the services of their counsel in presenting this motion for recovery of litigation expenses. The fee of Schultz' appraiser (excepting an initial fee of $1,000 incurred prior to the commencement of the action for which no allowance was made) for the preparation and trial of the action was all incurred after February 27, 1976.

The court further concluded that Schultz were entitled to recover $5,000 for the services of their appraiser in the preparation and trial of the case and $200 for the services of their appraiser in presenting this motion, as well as the sum of $28 for the filing fee paid to the clerk of the trial court upon filing their answer. Accordingly, the court entered the instant order in favor of Schultz in the amount of $6,428.

At the time here pertinent, former[1] Code of Civil Procedure section 1249.3 read as follows: "At least 30 days prior to the date of trial, plaintiff shall file with the court and serve a copy thereof on defendant its final offer to the property sought to be condemned and defendant shall in like manner, file and serve a copy thereof on plaintiff his final demand for the property sought to be condemned. Service shall be accomplished in the manner prescribed by Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.

"*If the court,* on motion of the defendant made within 30 days after entry of judgment, *finds that the offer of the condemnor was unreasonable and that the demand of condemnee was reasonable,* all viewed in the light of the determination as to the value of the subject property, *the costs allowed* pursuant to Section 1255[2]*shall include all expenses reasonably*

[1]The statute was repealed by Statutes of 1975, chapter 1275, section 1, and replaced by the new Eminent Domain Law (Stats. 1975, ch. 1275, § 2), which became operative on July 1, 1976, pursuant to Code of Civil Procedure section 1230.065 (Stats. 1975, ch. 1275, § 2). The specific provision of the new law which replaces former section 1249.3 is section 1250.410 which substantially reenacts the old with a clarification of the standard of reasonableness which is to be considered " 'in the light of the evidence admitted and the compensation awarded. . .' " (*County of Los Angeles* v. *Kranz,* 65 Cal.App.3d 656, fn. 1, at p. 659 [135 Cal.Rptr. 473]). The legislative committee comment refers to the definition of litigation expenses in new section 1235.140, which reads as follows: " 'Litigation expenses' includes both of the following:

"(a) All expenses reasonably and necessarily incurred in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings.

"(b) Reasonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were reasonably and necessarily incurred to protect the defendant's interests in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings whether such fees were incurred for services rendered before or after the filing of the complaint." (Emphasis added.) The underlined phrase was added in 1975 and is identical to former section 1255a, subdivision (c).

The Law Revision Commission comment on section 1235.140 indicates that the definition in substance is the same as that of the second sentence of former section 1255a, subdivision (c).

[2]Former Code of Civil Procedure section 1255 provided: "Costs may be allowed or not, and if allowed, may be apportioned between the parties on the same or adverse sides, in the discretion of the court." This section was also repealed by Statutes of 1975, chapter 1275, section 1.

*and necessarily incurred in preparing for and in conducting the condemnation trial including, and not limited to, reasonable attorney's fees, appraisal fees, surveyor's fees, and the fees for other experts, where such fees are reasonably and necessarily incurred to protect defendant's interest prior to trial, during trial and in any subsequent judicial proceedings in the condemnation action.*

"In determining the amount of attorneys fees and expenses to be awarded under this section, the court shall consider written, revised or superseded offers and demands served and filed prior to or during the trial." (Italics added.) (Added Stats. 1974, ch. 1469, § 1.)

As Schultz' entitlement to their litigation expenses pursuant to the above statute depends on whether Lake County's final pretrial offer was unreasonable, as the court found, we turn first to the cross-appeal. Lake County argues that: 1) the court erred in finding that its superseded offer of $165,000 constituted a concession that its final pretrial offer of $125,875 was unreasonable; and 2) in any event no substantial evidence[3] supports the court's finding and conclusion that the final pretrial offer of $125,875 was unreasonable.

■ Lake County's first contention has merit. The final paragraph of the statute clearly indicates that subsequent offers and demands affect only the amount of the litigation fees, not the condemnee's entitlement thereto (*City of Gardena* v. *Camp,* 70 Cal.App.3d 252, 258 [138 Cal.Rptr. 656]). We, therefore, will not consider the above mentioned finding in our determination of the question of sufficiency of the evidence to support the finding that Lake County's offer of $125,875 was unreasonable.

■ Preliminarily, we must determine whether the issue is one of law, as Schultz contend, or one of fact, as Lake County argues. The statute requires that the reasonableness of the offer must be viewed in light of the adjudicated value of the property. Here, Lake County's final offer was $125,875; the jury valued the Schultz property at $180,650. Reasonableness depends on the proportional difference between the final offer and the final demand, the absolute monetary amounts, whether the condemner ignored the appraisal of the condemnee's expert, and whether the condemnee used good faith, care and accuracy in determining its offer (*City of Gardena* v. *Camp, supra,* 70 Cal.App.3d, p. 256; *County of Los*

[3]Although the findings were based on the valuation evidence adduced at the trial, Lake County on its cross-appeal has chosen to include in the record on appeal only the valuation reports filed by both sides in support of the instant motion.

*Angeles* v. *Kranz, supra,* 65 Cal.App.3d, p. 659; *City of Los Angeles* v. *Cannon,* 57 Cal.App.3d 559, 562 [127 Cal.Rptr. 709]). The measure of reasonableness is in the first instance a factual matter for the trial court (*City of Gardena* v. *Camp, supra,* p. 259; *City of Los Angeles* v. *Cannon, supra,* p. 562). As in any finding by the trial court, however, if the uncontradicted evidence permits only one conclusion, the issue is legal, not factual (*County of Los Angeles* v. *Kranz, supra,* p. 659).

Schultz rely on *City of Los Angeles* v. *Kranz, supra,* 65 Cal.App.3d p. 659, which held that under the facts of that case, a settlement offer that was less than 80 percent of the verdict was so "significantly disproportionate to the adjudicated value of the property" that the offer was unreasonable as a matter of law. As both former section 1249.3 and its replacement, section 1250.410, lack specific guidelines, we conclude that the Legislature has rejected a formulaic or otherwise arbitrary approach in favor of a discretionary one based on the factors developed by the courts, set forth above. In view of the statute, we cannot read Kranz as establishing arbitrary schedules divorced from other factors. Accordingly, we hold that the question is one of fact in the instant case (cf. *Community Redevelopment Agency* v. *Friedman,* 76 Cal.App.3d 188 [143 Cal.Rptr. 160]).

■ The court here found that the absolute difference between the final offer of $125,875 and the verdict of $186,650 was $60,775, a large sum, amounting to 33 percent of the verdict and 48 percent of the final offer. The difference between the final demand and the verdict ($23,350) amounted to 12½ percent of the verdict, or 11 percent of the final demand.

Lake County argues that the fact that its appraisal was made by a licensed appraiser is conclusive. We do not agree. The care and accuracy of Lake County's appraisal vis-à-vis that of Schultz' expert, Stahr, was for the trial court. Presumably Stahr was also a competent appraiser. He valued the entire parcel at $210,000; Lake County at $125,875. Both used the market data and cost approach and relied on some of the same sales. Given the unique character of real property, it is a matter of common sense that "[w]hile expert witnesses testifying on behalf of the public authority and those on behalf of the property owner may differ widely on their opinion as to the value of the property taken, this difference usually reflects the elusive nature of the fair market value concept" (*Klopping* v. *City of Whittier,* 8 Cal.3d 39, pp. 43-44 [104 Cal.Rptr. 1, 500 P.2d 1345]). There is always an element of bargaining inherent in the adversary

relationship between a purchaser and seller and the consequent disparity of offers and this factor must not be obliterated by a mechanistic view of the jury verdict. However, the substantial difference between the appraisals here may have cast some doubt on the accuracy of Lake County's appraisal. Thus, there was substantial evidence to support the court's finding that the final offer was predicated upon an investigation of the value of the property that was substantially deficient in its thoroughness and objectivity.

Conflicts in the evidence are for the trial court. As a factual determination supported by the evidence, the trial court's finding of reasonableness, along with the judgment, is entitled to a broad presumption of validity on appeal (*Mehl* v. *People* ex rel. *Dept. Pub. Wks.,* 13 Cal.3d 710, 715-716 [119 Cal.Rptr. 625, 532 P.2d 489]).

We conclude that substantial evidence supports the trial court's finding that Lake County's offer was unreasonable and the findings support the judgment. Accordingly, there is no merit to the cross-appeal and Schultz were entitled to litigation expenses, pursuant to former Code of Civil Procedure section 1249.3.

We turn, therefore, to Schultz' appeal which focuses on the amount awarded.

■ Schultz first contend that the trial court erred by denying them litigation expenses incurred before February 27, 1976,[4] the 30th day prior to the trial. We agree. We note that at the time the trial court interpreted the statute to impose the 30-day limitation, it did not have the benefit of any decisional law.

*County of Los Angeles* v. *Kranz, supra,* 65 Cal.App.3d 660, indicated that the statute ". . . was intended to promote settlement of valuation disputes in eminent domain proceedings and guarantee full recompense to the landowners in case of unnecessary litigation." In holding that the

---

[4]As indicated above, *ante,* at page 663, the basis of the trial court's finding that Schultz' attorney fees were incurred before February 27, 1976, was the contingent fee contract signed by Schultz with their attorneys in December 1975. The finding in itself is dubious as "The most common fee arrangement is one by which the lawyer charges a specific percentage of any amount the condemnee receives in excess of the highest prior firm offer *in writing* made by the condemnor" (Condemnation Practice in Cal. (Cont. Ed. Bar 1973) § 1.15, p. 10). Contingent fee compensation has been held proper for inverse condemnation attorney fees (*Parker* v. *City of Los Angeles,* 44 Cal.App.3d 556, 567 [118 Cal.Rptr. 687]).

30-day period is mandatory for the purpose of determining whether either party is *entitled* to the benefits of the statute, the court in *People* ex rel. *Dept. of Transportation* v. *Callahan Brothers,* 69 Cal.App.3d 541, at page 544 [138 Cal.Rptr. 239], explained the rationale of the statute as follows: "As a means of encouraging negotiations before trial, the Legislature put incentives into the statute. The condemnee who makes a timely final demand and goes to trial only when the offer is unreasonable has the potential of being reimbursed for expenses which he could not otherwise recover; likewise, the condemner who makes a timely reasonable offer, whether it is accepted by the condemnee or not, may avoid having to pay the condemnee's extraordinary costs. The property owner, by not filing a final demand when he thinks the condemner's offer is unreasonable, forfeits the possibility of recovering costs; the condemner, by not filing a final offer, may be liable for the property owner's extraordinary costs where the owner has made a final demand."

We think the 30-day period of the first paragraph of former section 1249.3 only determines entitlement to litigation expenses and was not intended as a cut-off date as to all litigation expenses incurred more than 30 days prior to trial. Our interpretation is consistent with the language of the second paragraph of the statute which imposes no time limitation and its legislative history in the light of the substantially identical language of former Code of Civil Procedure section 1255a.

Code of Civil Procedure section 1249.3 was the Legislature's partial response to the Supreme Court's holding in *County of Los Angeles* v. *Ortiz,* 6 Cal.3d 141, 148-149 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538], that since there was no constitutional compulsion to award litigation costs to a landowner in a condemnation proceeding, the determination of which costs were permissibly recoverable, remained with the Legislature (*Community Redevelopment Agency* v. *Abrams,* 15 Cal.3d 813, fn. 10 at p. 828 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174]). The court in *Ortiz,* at pages 147-148 noted that the parties urged a ruling conditioning recovery of costs on a finding that the condemnee was compelled to litigate the value of his property because the condemner's pretrial offer was unreasonable.

At the time here pertinent, former Code of Civil Procedure section 1255a,[5] subdivision (c), relating to litigation expenses after abandonment

---

[5]Former section 1255a pertaining to abandonment of condemnation proceedings, also repealed by the 1975 legislation, but operative at the time of the instant action, provided, so far as here pertinent: "(c) Upon the denial of a motion to set aside such abandonment

and dismissal of eminent domain proceedings, contained language substantially similar to former Code of Civil Procedure section 1249.3.

Prior to its 1968 amendment, the last sentence of former Code of Civil Procedure section 1255a, subdivision (c), specifically provided that allowable costs and disbursements were not to include expenses incurred where the condemnation was dismissed 40 days or more from the pretrial conference date or, if not, the date of trial. Prior to its repeal, this sentence had been interpreted by our Supreme Court in *LaMesa-Spring Valley School Dist. v. Otsuka,* 57 Cal.2d 309, 313-314 [19 Cal.Rptr. 479, 369 P.2d 7], and specifically held applicable only to the condemnee's entitlement to "expenses incurred in preparing for trial," i.e., appraisal fees, but not to attorney fees. *LaMesa* held at page 316 that attorney fees were recoverable for services performed prior to the complaint. In holding that attorney fees incurred prior to the filing were recoverable as reasonably necessary, Justice Peters reasoned as follows at page 316: "It must be kept in mind that attorney's fees in a condemnation action are in a different category from those in other actions. Eminent domain, so far as the defendant is concerned, is not based upon any activity on his part. There is no voluntary element in such an action. When the public agency announces its intention to take his property, it is telling the owner that he must sell his property whether he wants to or not. (See *City of Sacramento v. Swanston,* 29 Cal.App. 212, 220 [155 P. 101]; 1 Nichols, Eminent Domain (3d ed. 1950) p. 368.) Faced with such a threat, any reasonably prudent property owner would retain an attorney to protect his interests, even before the filing of suit. The careful lawyer, to adequately represent his client in this stage of negotiations, will perform many services which will be helpful and necessary if a complaint is filed and the case goes to

---

or, if no such motion is filed, upon the expiration of the time for filing such a motion, on motion of any party, a judgment shall be entered dismissing the proceeding and awarding the defendants their recoverable costs and disbursements. *Recoverable costs and disbursements include (1) all expenses reasonably and necessarily incurred in preparing for the condemnation trial, during the trial and in any subsequent judicial proceedings in the condemnation action and (2) reasonable attorney fees, appraisal fees, and fees for the services of other experts where such fees were reasonably and necessarily incurred to protect the defendant's interests in preparing for the condemnation trial, during the trial, and in any subsequent judicial proceedings in the condemnation action whether such fees were incurred for services rendered before or after the filing of the complaint.* In case of a partial abandonment, recoverable costs and disbursements shall include only those recoverable costs and disbursements, or portions thereof, which would not have been incurred had the property or property interest sought to be taken after the partial abandonment been the property or property interest originally sought to be taken. Recoverable costs and disbursements, including expenses and fees, may be claimed in and by a cost bill, to be prepared, served, filed, and taxed as in civil actions. Upon judgment of dismissal on motion of the plaintiff, the cost bill shall be filed within 30 days after notice of entry of such judgment." (Italics added.)

trial. The condemnation defense lawyer, for both trial and pretrial negotiations, must acquire a working knowledge not only of the legal principles involved, but also of local real estate practices, appraisal theories and engineering techniques. (Huxtable, Trial Preparation, Discovery, Pretrial, and Jury Instructions, Cal. Condemnation Practice (Cont.Ed.Bar) p. 223 at p. 227.) Almost necessarily, whether suit has been filed or not, he must inspect the property, prepare demonstrative evidence, look up the applicable law and engage in conferences with appraisers and lay witnesses in an effort to ascertain land use and value. (See *State of California* v. *Westover Co., supra,* 140 Cal.App.2d 447, at p. 454; O'Neill, The Appraisal, Cal. Condemnation Practice (Cont. Ed. Bar) p. 23, at p. 35; Huxtable, Trial Preparation, etc., *supra,* at pp. 231-232.) If these services are rendered after the filing of suit they clearly are recoverable. (See *State of California* v. *Westover Co., supra.*) Of course, if suit is never filed the land owner would have to pay the fees of his attorney, because it is only in the event suit is filed that attorney fees are recoverable. If suit is not filed the landowner must pay the price of his diligence in protecting his property. But if suit is filed, there is no sound reason why the trial court should exclude these prior services in determining a reasonable fee merely because performed before the action is commenced. The statute contemplates reimbursement for the attorney's fees reasonably incurred in preparing for trial. It would be ridiculous to require the attorney to repeat formally all of this work after the complaint is filed in order to protect his client's rights under section 1255a in the event of an abandonment."

As indicated above, Code of Civil Procedure section 1249.3 was added in 1974 (Stats. 1974, ch. 1469, § 1) after the repeal of the 40-day provision of former section 1255a, subdivision (c).[6] The 40-day period determined the condemnee's entitlement, and was not in any way related to the time period when the expenses were incurred. Also, as indicated at footnote 1, the definition of litigation expenses in the present statute, Code of Civil Procedure section 1235.140, is in substance the same as former section 1255a. Thus, we conclude that Schultz are entitled to their attorney fees in the condemnation action, although they were incurred prior to February 27, 1976. As the court found that the amount was reasonable, it is not in dispute, nor can there be any question of necessity.

---

[6]The language deleted from subdivision (c) by Statutes of 1968, chapter 133, section 1, read, so far as pertinent: . . . that said costs and disbursements *shall not include expenses incurred in preparing for trial where the action is dismissed 40 days or more prior to the time set for the pretrial conference in the action or, if no pretrial conference is set, the time set for the trial of the action."* (Italics added.)

The next question is whether Schultz are also entitled to litigation expenses incurred prior to the filing of the complaint. Here again, we turn to the parallel language of former section 1255a. As indicated above, in *La Mesa-Spring Valley Dist.* v. *Otsuka, supra,* 57 Cal.3d 309, our Supreme Court interpreted former Code of Civil Procedure section 1255a, which then contained language almost identical to former Code of Civil Procedure section 1249.3, to permit the recovery of attorney fees reasonably necessary to prepare for the condemnation suit incurred prior to the filing of the complaint. The same 1968 amendment of former section 1255a, which deleted the 40-day provision, also added the language codifying *LaMesa-Spring Valley, supra,* namely, the specific reference to appraisal fees and the phrase "whether such fees were incurred for services rendered before or after the filing of the complaint." Indeed, the only significant difference between former Code of Civil Procedure section 1255a, subdivision (c), and former Code of Civil Procedure section 1249.3, which we must construe here, is the phrase "whether such fees were incurred for services rendered before or after the filing of the complaint,"[7] after the phrase "in the condemnation action."

At first blush, such a difference in language might lead one to conclude that the omission of the specific references to fees for services incurred before the filing of the complaint meant that pursuant to former Code of Civil Procedure section 1249.3, Schultz could not recover these expenses. However, given the interpretation of "reasonable attorney fees" in *LaMesa-Spring Valley, supra,* and the parallel language and legislative history of Code of Civil Procedure section 1249.3 and its successor, and Code of Civil Procedure section 1255a, which indicate that no substantive changes were intended, we conclude that Schultz were also entitled to the $1,000 appraisal fee incurred prior to the filing of the complaint on February 20, 1975.[8]

■ We turn next to Schultz' contention concerning the trial court's denial of a large portion of attorney fees sought for the preparation and presentation of the instant motion. As indicated in our summary of the facts above, the court found that the amount charged was reasonable ($70 per hour for 91½ hours, or $6,405) and necessarily incurred. The court, however, concluded that the sum of $6,405 did not "reasonably represent

[7]As also indicated in footnote 1 above, this language has been retained in present Code of Civil Procedure section 1235.140.

[8]Of course, Schultz would also be entitled to recover any attorney fees incurred prior to that date, but the record here indicates that Schultz did not employ counsel until December 1975.

either the value of counsel's services in presenting the motion or an appropriate allowance to be made to [Schultz] for such services for the reasons that a) much of the legal research done by counsel was on a point reasonably expected to recur in counsel's specialty practice of eminent domain and the benefit of the research performed accrued not only to [Schultz] but to all of counsel's clients for whom a similar claim to litigation expense can be presented; and b) the compensation which counsel has otherwise earned in this case for his services through the condemnation trial is substantial." Thus, the court allowed Schultz attorney fees of $1,200 for the instant motion.

Neither of the reasons given by the court below support its findings and the conclusion based thereon. There is no evidence indicating that the issue could reasonably be expected to recur in counsel's specialty practice of eminent domain. Indeed, as our above discussion of former Code of Civil Procedure section 1249.3 indicates, at the time of the instant motion, the statute was relatively new and had not been construed by any appellate court. It has since been repealed and replaced by several new statutes which contain different language but are substantially similar. Thus, there can be no question that the fees were necessarily incurred.

Further, the potential benefit to other clients of Schultz' counsel is irrelevant since the attorney fees are awarded to Schultz and not to his counsel (*Port San Luis Harbor Dist.* v. *Port San Luis Transp. Co.,* 213 Cal.App.2d 689, 696 [29 Cal.Rptr. 136]).

The trial court's second reason is equally without merit. The fact that counsel earned substantial fees for his services in the condemnation action has no bearing on the additional amount earned in the litigation of the instant motion. Further, we cannot agree with Lake County's contention that the court merely exercised its discretion. We think the question is one of law. As the court found that the fees charged were reasonable, the amount is not in dispute.

Finally, there can be no question that Schultz are also entitled to their costs and attorney fees on this appeal. The statute specifically refers to "any subsequent judicial proceedings" in the condemnation action and the substantially identical language of subdivision (c)(2) of former section 1255a has been held to apply to attorney fees on appeal (*Decoto School Dist.* v. *M. & S. Tile Co.,* 225 Cal.App.2d 310 [37 Cal.Rptr. 225]; *Orange County Mun. Water Dist.* v. *Anaheim Union Water Co.,* 247 Cal.App.2d

761, 764 [56 Cal.Rptr. 464]).[9] Of course, the trial court is the proper forum for the determination of attorney fees incurred in connection with this appeal (*La Mesa-Spring Valley School Dist.* v. *Otsuka, supra,* 57 Cal.2d 309, 318; *Downer Corp.* v. *Union Paving Co.,* 172 Cal.App.2d 126, 129 [342 P.2d 64]).

The judgment is reversed and the trial court directed to award Schultz: 1) $1,000 appraiser fees incurred before the filing of the complaint; 2) attorney fees of $26,436.80, incurred prior to February 27, 1976; 3) all of the attorney fees incurred in the preparation of the instant motion ($6,405); and 4) attorney fees and costs on this appeal.

Kane, J., and Rouse, J., concurred.

---

[9]We note that it was the absence of any language referring to subsequent proceedings, that led our Supreme Court to conclude that no attorney fees on appeal were available under former Code of Civil Procedure section 1246.3 (pertaining to inverse condemnation). (*Holtz* v. *San Francisco Bay Area Rapid Transit Dist.,* 17 Cal.3d 648, 651 [131 Cal.Rptr. 646, 552 P.2d 430].)