[L.A. No. 29899. In Bank. Nov. 30, 1971.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
MANUEL A. ORTIZ et al., Defendants and Appellants.

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
BENJAMIN BAIM et al., Defendants and Appellants.

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v.
SHULEN MOSKOWITZ et al., Defendants and Appellants.

(Consolidated Cases.)

## COUNSEL

Phill Silver and Robert M. Silver for Defendants and Appellants.

Kaplan, Livingston, Goodwin, Berkowitz & Selvin, Herman F. Selvin, Daniel S. Carlton, Richard F. Desmond, Desmond, Miller, Desmond & West, Irving Loube, William T. Ivey, Jr., Alfred P. Chasuk, Malovost & Chasuk, John E. Thorne, James E. Cox, Gary Rinehart, Fadem & Kanner,

Gideon Kanner, Jackson, Turner, Endeman & Mulcare, Jess S. Jackson, Jr., Ronald L. Endeman, Ronald J. Mulcare, O'Neill & Huxtable, Francis H. O'Neill and Richard L. Huxtable as Amici Curiae on behalf of Defendants and Appellants.

John D. Maharg, County Counsel, A. R. Early, Assistant County Counsel, and Charles Vinson Tackett, Deputy County Counsel, for Plaintiff and Respondent.

Evelle J. Younger, Attorney General, James E. Sabine, Assistant Attorney General, Lloyd Hinkelman and Dan G. Lubbock, Deputy Attorneys General, Roger Arnebergh, City Attorney (Los Angeles), Peyton H. Moore, Jr., Assistant City Attorney, Norman L. Roberts, Deputy City Attorney, Harry S. Fenton, Joseph A. Montoya and Charles E. Spencer, Jr., as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

MOSK, J.—In these consolidated cases the County of Los Angeles instituted proceedings in eminent domain to acquire property owned by defendants. In each trial defendants called an appraiser as an expert witness and introduced into evidence a report prepared by him. Subsequently, defendants sought to tax as costs against the county the fee charged by the expert witness for his testimony and report. The county objected to the allowance of these items, and the trial court found in its favor. On this appeal defendants assert that the county must pay the fees of the expert witness by virtue of the prohibition of the United States Constitution and the California Constitution against the taking of private property for public use without just compensation. (U.S. Const., Amend. V; Cal. Const., art. I, § 14.)[1]

Debating the proposal that a defendant in a condemnation action should be entitled to recover his nonstatutory litigation costs has been an academic exercise of ancient vintage in this state.[2] Section 1255 of the Code of Civil

[1]The Fifth Amendment declares, ". . . nor shall private property be taken for public use, without just compensation." Article I, section 14, of the California Constitution provides, "Private property shall not be taken or damaged for public use without just compensation having first been made . . . ."

[2]In this opinion we employ the term "litigation costs" in the sense of costs not ordinarily made recoverable by statute, such as expert witness fees and attorneys' fees. Although the instant case involves only expert witness fees, the rationale urged by defendants would require the condemner to pay other nonstatutory costs incurred by the condemnee including attorneys' fees.

Procedure provides, as it has since 1872, that in an eminent domain proceeding "Costs may be allowed or not . . . in the discretion of the court." However, the term "costs" in this context has been held in an unbroken line of cases to refer only to ordinary costs of suit, such as sheriff's and jury fees, and not to the fees of experts or attorneys. (E.g., *City of Los Angeles* v. *Agardy* (1934) 1 Cal.2d 76, 82 [33 P.2d 834]; *City of Los Angeles* v. *Abbott* (1932) 217 Cal. 184, 196 [17 P.2d 993]; *Coburn* v. *Townsend* (1894) 103 Cal. 233, 236 [37 P. 202]; *San Jose etc. R.R. Co.* v. *Mayne* (1890) 83 Cal. 566, 570 [23 P. 522]; *People* v. *Bowman* (1959) 173 Cal. App.2d 416, 418-419 [343 P.2d 267]; *County of Los Angeles* v. *Hale* (1958) 165 Cal.App.2d 22, 28-29 [331 P.2d 166]; *City of Los Angeles* v. *Vickers* (1927) 81 Cal.App. 737, 740 [254 P. 687]; *Pacific Gas etc. Co.* v. *Chubb* (1914) 24 Cal.App. 265, 267-269 [141 P. 36]; *Lincoln Northern Ry. Co.* v. *Wiswell* (1908) 8 Cal.App. 578, 581-582 [97 P. 536]; see *La Mesa-Spring Valley School Dist.* v. *Otsuka* (1962) 57 Cal.2d 309, 313 [19 Cal.Rptr. 479, 369 P.2d 7].)

The Legislature's intention to exclude litigation costs as an element in the recovery of costs in eminent domain proceedings becomes manifest by reference to analogous statutory provisions. Section 1255a of the Code of Civil Procedure provides that in the event of abandonment of a condemnation proceeding the defendant may be entitled to recover all necessary expenses incurred, including attorneys' fees. The purpose of the section is to remedy the injustice which would occur if an unduly acquisitive condemner, dissatisfied with an award, brought successive lawsuits against the landowner in an attempt to obtain a lower judgment. (*City of Los Angeles* v. *Abbott, supra,* 217 Cal. 184, 200.) The section has been amended a number of times since its original enactment in 1911 but no provision has been added for the payment of litigation costs in circumstances other than abandonment.

An even more cogent indication of legislative intent is the enactment of section 998 of the Code of Civil Procedure in 1969. In essence the section provides that if a party rejects a settlement offer prior to trial and subsequently at trial fails to obtain a judgment more favorable than the offer, the court may order him to pay the cost of services of expert witnesses reasonably necessary in the preparation of the case. The section specifically excludes application to eminent domain actions.

Defendants do not seriously dispute the foregoing indicia of legislative intent but, rather, they assert that just compensation under both the federal and state Constitutions depends upon judicial, not legislative, determination, that the statutory provisions allowing costs in eminent domain pro-

ceedings must be enhanced by the constitutional requirement of just compensation, and that to require a landowner to pay any portion of his litigation expenses would unconstitutionally deprive him, to the extent of such expenditures, of just compensation to which he is entitled.

No one can gainsay that the amount to be paid for property taken by the government is, under the Constitution, a matter for the courts rather than the Legislature, and this applies also to the measure of damages awarded for the taking of the subject property. (*United States* v. *New River Collieries* (1923) 262 U.S. 341, 343-344 [67 L.Ed.2d 1014, 1017, 43 S.Ct. 565]; *Seaboard Air Line Ry.* v. *United States* (1923) 261 U.S. 299, 304 [67 L.Ed. 664, 669, 43 S.Ct. 354]; *Monongahela Navig'n Co.* v. *United States* (1892) 148 U.S. 312, 327 [37 L.Ed. 463, 468, 13 S.Ct. 622]; see *B. & O. R. Co.* v. *United States* (1936) 298 U.S. 349, 368 [80 L.Ed. 1209, 1223, 56 S.Ct. 797].) Our problem involves a substantial variant of the foregoing premise: whether the constitutional admonition necessarily requires that a condemner pay the defendant's litigation costs in addition to the value of the property appropriated.

Authorities both in this state and elsewhere are, with one exception,[3] in accord with the view that the constitutional requirement for just compensation does not compel a condemner to pay a condemnee's litigation costs. (E.g., *Dohany* v. *Rogers* (1930) 281 U.S. 362, 368 [74 L.Ed. 904, 911, 50 S.Ct. 299, 68 A.L.R. 434];[4] *United States* v. *2353.28 Acres of Land, etc., State of Fla.* (5th Cir. 1969) 414 F.2d 965, 972; *United States* v. *15.3 Acres of Land* (M.D.Pa. 1957) 158 F.Supp. 122, 125; *Frustuck* v.

---

[3]In Florida it is held that a landowner is entitled to recover the fees of expert witnesses in a condemnation action by virtue of the constitutional requirement of just compensation. (*Dade County* v. *Brigham* (Fla. 1950) 47 So.2d 602, 604-605 [18 A.L.R.2d 1221].) Some states, unlike California, provide by statute that litigation costs of the landowner must be paid by the condemner. (See Ayer, *Condemnation Trial Costs* (1969) 21 Stan.L.Rev. 693, 709.)

[4]Amici curiae insist that the declaration of the United States Supreme Court in *Dohany* that attorneys' fees and expenses are not embraced within just compensation for land taken in eminent domain is dictum. We do not agree. In that case Michigan statutory law provided that if a condemnation proceeding was brought by a railway the landowner could recover certain expenses such as attorneys' fees, in addition to damages, whereas if the proceeding was brought by an agency of the state, such expenses would not be allowed. The state sought to condemn the defendant's land and he claimed that the action should have been brought by a railway rather than the state because the land sought was to be used for railroad purposes. The court held there was no indication that the landowner would be deprived of just compensation for the land taken, no matter which of the two laws the condemner chose to employ. As to the advantages provided by the statute relating to condemnation by a railway, such as the award of attorneys' fees, it was held that such fees were not embraced within the concept of just compensation and that the state could properly elect to award such fees in one type of proceeding and not in another.

*City of Fairfax* (1964) 230 Cal.App.2d 412, 416 [41 Cal.Rptr. 56] [inverse condemnation]; *City of Los Angeles* v. *Vickers, supra,* 81 Cal.App. 737, 739; *Pacific Gas etc. Co.* v. *Chubb, supra,* 24 Cal.App. 265, 267-268; *State* v. *McDonald* (1960) 88 Ariz. 1 [352 P.2d 343, 350-351]; *City of Ottumwa* v. *Taylor* (1960) 251 Iowa 618 [102 N.W.2d 376, 378]; *North American Realty Co.* v. *City of Milwaukee* (1926) 189 Wis. 585 [208 N.W. 489]; see *La Mesa-Spring Valley School Dist.* v. *Otsuka, supra,* 57 Cal.2d 309, 313; see also cases collected in 30 C.J.S. § 386, pp. 442-443, and 4A Nichols on Eminent Domain (rev. 3d ed. 1971) § 14.249.) The overwhelming weight of authority thus supports the trial court's disallowance of the expert witness fees.

Defendants, in urging us to hold that the trial court ruled erroneously, rely primarily upon *City and County of San Francisco* v. *Collins* (1893) 98 Cal. 259 [33 P. 56]. In that case the plaintiff county refused to pay any of the landowner's statutory costs after the trial of a condemnation action in which judgment was rendered in the county's favor. It was held that the power of the Legislature to provide for the payment of costs in a condemnation action was limited by the just compensation provision of the California Constitution and that "[t]o require the defendants . . . to pay any portion of their costs necessarily incidental to the trial of the issues on their part, or any part of the costs of the plaintiff, would reduce the just compensation awarded by the jury, by a sum equal to that paid by them for such costs." (98 Cal. at p. 262.)

While the expansive rhetoric quoted above understandably lends comfort to defendants, it is essential to keep in mind that only ordinary costs such as statutory witness fees and jury fees were at issue in *Collins.* The landowners did not claim, as do defendants here, that they were entitled to additional expenses over and above those provided by statute. We do not interpret *Collins* to be sufficiently elastic to stretch beyond the facts to which it relates.

The experience of two other jurisdictions is instructive. In Wisconsin and Louisiana early cases had contained broad expressions similar to that contained in *Collins,* also in a factual context of costs specified as recoverable by statute. (*Stolze* v. *Milwaukee & L.W.R. Co.* (1902) 113 Wis. 34 [88 N.W. 919, 924]; *Westwego Canal & T. Co.* v. *Louisiana Highway Com'n.* (1942) 200 La. 990 [9 So.2d 389, 392-393].) In both jurisdictions defendants in subsequent condemnation proceedings relied upon such general language to justify seeking assessment of costs, such as attorneys' fees, not rendered recoverable by statute. These attempts were thwarted; it was held that the earlier cases could not be extended beyond the factual situations

there involved and that only costs specified by statute were recoverable. (*North American Realty Co*. v. *City of Milwaukee, supra*, 189 Wis. 585 [208 N.W. 489]; *State, Department of Highways* v. *Salemi* (1966) 249 La. 1078 [193 So.2d 252, 254-255].)[5]

Amici curiae in support of defendants rely upon authorities containing even more panoramic expressions than *Collins*. These cases hold that just compensation requires a landowner be placed in a position as good pecuniarily upon condemnation of his property as would have prevailed had his property not been taken. (E.g., *United States* v. *Miller* (1943) 317 U.S. 369, 373 [87 L.Ed. 336, 342, 63 S.Ct. 276, 147 A.L.R. 55]; *People ex rel. Dept. Pub. Wks*. v. *Lynbar, Inc*. (1967) 253 Cal.App.2d 870, 880 [62 Cal.Rptr. 320].) The rationale of these cases, assert amicus curiae, compels the conclusion that the condemner is to pay the landowner's litigation expenses because if the latter must assume such costs himself he would not be in as good a position pecuniarily as he would have been absent a taking. Analysis indicates, however, that the language relied upon by defendants relates to the property taken and not to costs of suit; indeed, the cases cited relate that ordinarily the measure of just compensation is the market value of the property taken.[6]

Both the county and defendants advance a plethora of policy arguments in support of their respective positions. Defendants urge that it is eminently fair to allow litigation costs in condemnation proceedings because the landowner innocently holds property the government covets and he is thus distinguishable from a defendant wrongdoer in ordinary civil litigation; that the landowner bears the burden of proving the value of his property and is virtually compelled to employ an attorney and expert witnesses to establish his claim; and that by compelling the owner to assume litigation costs to prove his claim he is required to bear more than his equal share of the financial burden of a public project. It is asserted there would be no decline in pretrial settlements in eminent domain cases if courts were to

[5]In Louisiana expert witness fees are allowed as costs by statute. The defendant in *Salemi* attempted to extend the statutory grant to circumstances in which no trial eventuated but an expert was employed in preparation for trial. The appellate court held that the broad language of *Westwego* did not justify such extension.

[6]Amici also contend that even if just compensation is measured only by fair market value, evidence of the condemnee's cost for experts and lawyers is admissible as an element bearing on that value. Although this problem is not directly involved in the case at bar, we suggest the proposition is untenable. It is based upon the supposition that one who buys land must consider potential litigation costs as an element of value because of the possibility or probability that it would be condemned at some time in the future. We know of no authority permitting such a remote and speculative element to be considered in determining fair market value of property.

condition the landowner's recovery of these costs upon a finding that he was compelled to litigate the value of his property because the condemner's offer was unreasonable, as shown by the ultimate award when compared to the condemner's settlement offer prior to trial.

The county maintains, on the other hand, that even if the award of litigation costs to the condemnee were to be conditioned upon a finding by the trial court of an inadequate settlement offer, landowners would be tempted to gamble upon litigation rather than to accept offers of settlement, placing an added burden upon the judicial process and greatly increasing the cost to the public of acquiring needed property.[7] Furthermore, asserts the county, a landowner is in no different position than an innocent victim of an automobile accident or a defective product who may also be compelled to file suit to obtain a fair award of damages, yet in those circumstances the victim of the wrong is not entitled to litigation costs. Nor can a governmental agency which needs specific property for a project benefiting the public be deemed a wrongdoer, unlike the culpable defendant in a tort case; it would be discriminatory to require the former to pay litigation costs and not the latter.

In this provocative debate the coloring is not black and white; all but the participants can see shades of grey. There is arguable merit to the equitable concepts advanced by both parties.[8] ▮ In resolving the dilemma, as we must, we are impressed with the authorities which are almost unanimously in agreement that there is no constitutional compulsion to award litigation costs to a landowner in a condemnation proceeding; defendants have not offered any persuasive justification for overruling this virtually unbroken line of interpretive decisions. ▮ It follows that since allowable costs are

---

[7]The county cites the experience of Florida after the decision in *Dade County* v. *Brigham* (1950) *supra*, 47 So.2d 602 (see fn. 3, p. 5) as an example of the practical effects of the rule sought by defendants. It is stated that there was a sharp reduction in the ratio of properties acquired by purchase after this decision, from 90 percent before 1950 to 20 percent by 1957. Amici reply that this statistic results from the fact that Florida permits recovery of expert witness fees in every case and that the figures would be different if the landowner's recovery of litigation costs was conditioned upon a finding by the trial court that he was compelled to litigate the value of his property because of the unreasonably low settlement offered by the condemner.

[8]We note with particular sympathy the contention that it is markedly unfair in some cases to compel a small landowner to bear his own litigation costs when he has a small equity in his property. In such a situation the condemnee may be virtually forced to settle his claim, perhaps for an unreasonably low amount, because his litigation costs could exceed the sum he would receive. The Legislature apparently made an attempt to remedy the problem in the last session by the passage of a bill, ultimately vetoed by the Governor, which would have permitted an award of appraiser's fees to owners of small residential properties acquired by governmental agencies.

of policy as distinguished from constitutional dimension, determination of costs which are permissibly recoverable remains with the Legislature rather than the courts.[9] ▮ There being no statutory authority for awarding litigation costs, as that term has been used herein, we conclude the trial court properly upheld the county's objections to the cost bills.

The order of the trial court is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[9]The Legislature appears to be aware of the problems involved in the present cost-allocation system. The California Law Revision Commission has made a study of the issue and a number of imaginative solutions have been suggested to it. (See Ayer, *Condemnation Trial Costs, supra,* 21 Stan.L.Rev. 693.) The Code of Civil Procedure provides that the parties may agree to arbitration of the compensation to be awarded in a condemnation case (Code Civ. Proc., § 1273.01 et seq.) and that the condemner must pay the expenses of arbitration and ordinary costs but the attorneys' and expert witness' fees may be charged to the condemner only upon agreement of the parties. (Code Civ. Proc., § 1273.03.)