[No. B132012. Second Dist., Div. Six. Jan. 30, 2001.]

DOWNEN'S, INC., et al., Plaintiffs and Appellants, v.
CITY OF HAWAIIAN GARDENS REDEVELOPMENT AGENCY,
Defendant and Respondent.

**COUNSEL**

Palmieri, Tyler, Wiener, Wilhelm & Waldron, Michael H. Leifer and Ronald M. Cole for Plaintiffs and Appellants.

Woodruff, Spradlin & Smart, John E. Cavanaugh, M. Lois Bobak, Judy A. Barnwell and Stephen J. Beaton for Defendant and Respondent.

**OPINION**

**GILBERT, P. J.**—A government agency pays only a portion of a judgment against it for inverse condemnation. In this case of first impression, we hold that Code of Civil Procedure section 1036[1] authorizes litigation expenses to the prevailing plaintiff in an action to enforce the inverse condemnation judgment under Government Code section 970 et seq. We therefore reverse the trial court's decision to tax costs and remand with directions to award litigation expenses.

### FACTS

Appellants Downen's, Inc., and Mary and Dave Downen (Downens) owned and operated Lakewood Suzuki, an automobile dealership, on leased property purchased by respondent City of Hawaiian Gardens Redevelopment Agency (Agency) in 1993. In 1994, the Agency served the Downens with a 90-day notice to vacate the property. The Downens did not find a suitable site to relocate and were forced to close the dealership and liquidate its assets.

On September 21, 1994, the Downens filed a complaint in inverse condemnation against the Agency to recover compensation for the taking of

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

their leasehold interest in the property and damage to their business. In October 1996, the parties settled the case by stipulation. The Agency agreed to pay by December 16, 1996, the principal sum of $650,000, with interest, and "litigation expenses . . . including but not limited to those allowed by CCP § 1036." The trial court entered judgment on January 31, 1997. At the time of entry of judgment, the Agency had deposited with the court or paid the Downens in lieu of deposit a total sum of $776,224.84.

The parties did not agree on the amount of litigation expenses and, on the Downens' motion, the trial court awarded them $414,782.45 on March 18, 1997. This amount was added to the judgment. The Agency agreed to pay the entire judgment on or before April 17, 1997, but failed to do so. Nor did it pay the balance of the judgment or file an appeal. Instead, it filed a motion under Government Code section 970.6 for an order permitting installment payments of the unpaid portion of the judgment. The trial court denied the motion. The Agency filed a notice of appeal but later abandoned it.

The Downens filed a supplemental memorandum of costs for expenses incurred after judgment in the inverse condemnation action. The trial court denied the Agency's motion to strike the supplemental memorandum of costs, awarded the Downens $47,030.95 in additional costs and attorney fees, and added the award to the judgment. The Agency did not appeal the award and did not pay the balance of the judgment.

The Downens then filed a petition for writ of mandate pursuant to Government Code section 970.2 seeking to enforce the unpaid portion of the judgment. Section 970.2 provides: "A local public entity shall pay any judgment in the manner provided in this article. A writ of mandate is an appropriate remedy to compel a local public entity to perform any act required by this article." The trial court granted the petition and entered judgment on December 16, 1998.[2]

The Downens filed and served a memorandum of costs for litigation expenses incurred in the writ proceeding, seeking $84,405.00 in attorney fees and $2,146.13 in costs. The Agency filed a motion to tax costs. The trial court granted the Agency's motion to tax costs on the ground that no statutory authority allows such costs. It therefore disallowed attorney fees, photocopy charges ($772.05), telecopier charges ($61.00), and telephone charges ($12.65). The Downens filed a timely notice of appeal.

---

[2]We grant the Downens' and the Agency's requests for judicial notice of documents relating to the Agency's tardiness in paying the judgment and the Downens' attempts to enforce it.

DISCUSSION

Determining the statutory basis for an attorney fee award is a legal question subject to de novo review. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1132-1133 [94 Cal.Rptr.2d 448].) ▪ Where the language of a statute is clear and unambiguous, there is no need for construction. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934].) We apply rules of statutory construction only where there is ambiguity or conflict in the provisions of a statute, or a literal interpretation would lead to absurd consequences. (*Younger v. Superior Court* (1978) 21 Cal.3d 102, 113 [145 Cal.Rptr. 674, 577 P.2d 1014].)

Where a statute is reasonably susceptible to two interpretations, the court must adopt the one that is consistent with the apparent legislative purpose and intent and that, when applied, will result in wise policy rather than absurd or harsh results. (*County of San Diego v. Muniz* (1978) 22 Cal.3d 29, 36 [148 Cal.Rptr. 584, 583 P.2d 109]; *Schuhart v. Pinguelo* (1991) 230 Cal.App.3d 1599, 1609 [282 Cal.Rptr. 144].) When uncertainty exists, the court must consider the consequences that will flow from a particular interpretation. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) In determining legislative intent, we look to the entire statutory scheme of which the provision is a part. (*Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617].) "[O]nce a particular legislative intent has been ascertained, it must be given effect even though it may not be consistent with the strict letter of the statute." (*Kagy v. Napa State Hospital* (1994) 28 Cal.App.4th 1, 6 [33 Cal.Rptr.2d 741].)

Attorney fees ordinarily are recoverable only if authorized by statute or contract. (§ 1021; *County of Santa Barbara v. David R.* (1988) 200 Cal.App.3d 98, 101 [245 Cal.Rptr. 836].) Section 1036 states: "In any inverse condemnation proceeding, the court rendering judgment for the plaintiff by awarding compensation, or the attorney representing the public entity who effects a settlement of that proceeding, shall determine and award or allow to the plaintiff as part of that judgment or settlement, a sum that will, in the opinion of the court, reimburse the plaintiff's reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, and engineering fees, actually incurred *because of that proceeding* in the trial court or in any appellate proceeding in which the plaintiff prevails on any issue in that proceeding." (Italics added.)

▪ The Downens argue that the phrase "because of that proceeding" authorizes litigation expenses in the inverse condemnation action and in any

proceeding arising from the inverse condemnation action. The Agency takes the opposite view, arguing that the plain language of section 1036 limits litigation expenses to the inverse condemnation action. The two interpretations offered by the parties, neither of which is unreasonable, demonstrate that section 1036 is not clear on its face.

■ Both eminent domain proceedings and inverse condemnation actions rest on the constitutional requirement that the government must provide just compensation to a property owner when it takes his private property for a public use. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 19.) The principal distinction between direct and inverse condemnation actions is that in a direct action the public entity takes the initiative while in an inverse condemnation action the property owner takes the initiative. (*Baker v. Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862, 866 [218 Cal.Rptr. 293, 705 P.2d 866].) " '[T]he just compensation to which the owner is constitutionally entitled is the full and perfect equivalent of the property taken. [Citation.]' This 'means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken. [Citation.]' " (*Redevelopment Agency v. Gilmore* (1985) 38 Cal.3d 790, 796-797 [214 Cal.Rptr. 904, 700 P.2d 794]; *Community Redevelopment Agency v. Force Electronics* (1997) 55 Cal.App.4th 622, 633 [64 Cal.Rptr.2d 209].)

An allowance of attorney fees is not required by the just compensation clause and is subject to legislative discretion. (*County of Los Angeles v. Ortiz* (1971) 6 Cal.3d 141, 148-149 [98 Cal.Rptr. 454, 490 P.2d 1142, 68 A.L.R.3d 538].) The Legislature exercised its discretion by mandating recovery of litigation expenses, including attorney fees, in eminent domain proceedings (§§ 1268.610, 1250.410) as well as inverse condemnation actions. The courts have held that a property owner's right to recover costs is even stronger in inverse condemnation than in eminent domain, because when a public agency takes property without instituting condemnation proceedings, it forces litigation. (*Heimann v. City of Los Angeles* (1947) 30 Cal.2d 746, 752-753 [185 P.2d 597], overruled on other grounds in *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672 [312 P.2d 680]; see also *Wilson v. Beville* (1957) 47 Cal.2d 852, 862 [306 P.2d 789] ["In inverse condemnation the property owner is forced to prosecute proceedings otherwise he is remediless"]; *Orpheum Bldg. Co. v. San Francisco Bay Area Rapid Transit Dist.* (1978) 80 Cal.App.3d 863, 877 [146 Cal.Rptr. 5] ["[T]he principle is particularly applicable in inverse condemnation since the property owner is forced to take on the government's role in initiating the proceedings"]; *San Gabriel Valley Water Co. v. City of Montebello* (1978) 84 Cal.App.3d 757,

767 [148 Cal.Rptr. 830] [where plaintiff has been obliged to secure compensation through inverse condemnation, he is entitled to whatever benefits are available under section 1036].)

The Legislature's concern about inverse condemnees also is reflected in Government Code section 7267.6, which provides: "If any interest in real property is to be acquired by exercise of the power of eminent domain, the public entity shall institute formal condemnation proceedings. No public entity shall intentionally make it necessary for an owner to institute legal proceedings to prove the fact of the taking of his real property." "While section 7267.6 does not provide an independent basis for a separate cause of action or right to money damages [citations], it does provide a guideline for public entities [citations]. It also provides a strong statement of policy condemning a public entity's conduct in making it necessary for a property owner to institute an inverse condemnation action." *(Beaty v. Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 913 [231 Cal.Rptr. 128].)

The purpose of the statutory scheme is clear—"to prevent property owners from being forced to bear the cost of expensive litigation in order to protect their property interests against unreasonable governmental conduct." *(Tilem v. City of Los Angeles* (1983) 142 Cal.App.3d 694, 710 [191 Cal.Rptr. 229].) Here, the public agency's actions necessitated the filing of a separate proceeding to enforce the unpaid inverse condemnation judgment. By construing section 1036 to permit plaintiffs to recover their litigation expenses, we implement the Legislature's purpose.

On the other hand, the Agency's interpretation would jeopardize the property owner's recovery and frustrate the Legislature's goal of making inverse condemnees economically whole. Given the expression of a policy of concern for property owners forced to bring an inverse action to establish a taking, it would be anomalous to conclude the Legislature did not intend that inverse condemnees recover their litigation expenses when a public agency's conduct requires them to bring a proceeding to enforce the underlying inverse condemnation judgment. To hold otherwise would remove the incentive for an agency to pay a lawful judgment. The agency would gain unfair leverage to negotiate a lower judgment against the hapless citizen who must finance an enforcement action.

Application of section 1036 to this writ proceeding is supported by case law. In *City of San Jose v. Great Oaks Water Co.* (1987) 192 Cal.App.3d 1005 [237 Cal.Rptr. 845], the appellate court construed section 1235.140 of

the Eminent Domain Law, which contains a definition of "litigation expenses" substantially similar to that in section 1036.[3] The city argued that the trial court erred by granting an award of attorney fees for time spent on a Public Utilities Commission (PUC) proceeding subsequent to the eminent domain litigation. The court rejected the argument, reasoning: "[T]he PUC valuation proceeding [was] initiated by the City in conjunction with the instant eminent domain action. . . . [A]ny fees attributable to the PUC proceeding were necessitated solely by the City's filing of the instant condemnation action . . . ." (192 Cal.App.3d at p. 1020.)

The courts have reached similar results in other contexts. For example, in *In re Paiva* (1948) 31 Cal.2d 503, 509 [190 P.2d 604], our Supreme Court concluded that a writ of error *coram nobis* is "properly regarded 'as a part of the proceedings in the case to which it refers' rather than as 'a new adversary suit' " for purposes of determining whether a criminal defendant was exempt from paying civil filing fees for the writ action. In *Bravo v. Cabell* (1974) 11 Cal.3d 834, 839 [114 Cal.Rptr. 618, 523 P.2d 658], the court reached a similar result, holding "proceedings for extraordinary writs should likewise be considered as a part of the criminal actions to which they refer." "Such writ proceedings initiate no new controversy but relate only to the action below. They are made necessary by events in the criminal action . . . ." (*Id.* at p. 840.)

In *Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836 [216 Cal.Rptr. 649], the appellate court considered whether section 1021.5[4] permitted an attorney fee award to a prevailing plaintiff for work done in a related civil penalty proceeding filed by the defendant in addition to attorney fees for the underlying litigation. The court considered the award appropriate, reasoning: "It is clear that fees were not inappropriate merely because the penalty action was technically a separate action. While that action was not a necessary prerequisite to this action, the two were closely related and involved identical issues." (170 Cal.App.3d at p. 850.)

The Agency argues that an express attorney fee provision in the Enforcement of Judgment Law shows a legislative intent not to award attorney fees

[3]Section 1235.140 defines "litigation expenses" as "(a) [a]ll expenses reasonably and necessarily incurred in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings" and "(b) [r]easonable attorney's fees, appraisal fees, and fees for the services of other experts where such fees were reasonably and necessarily incurred to protect the defendant's interests in the proceeding in preparing for trial, during trial, and in any subsequent judicial proceedings whether such fees were incurred for services rendered before or after the filing of the complaint."

[4]Section 1021.5, commonly known as the private attorney general statute, authorizes the court to award attorney fees to a prevailing plaintiff if the plaintiff shows that the public benefit from the litigation outweighs the personal benefit received.

in an action brought under Government Code section 970.2. But the Enforcement of Judgment Law provides procedures for enforcing judgments against private entities and individuals. (Code Civ. Proc., §§ 680.010-724.260.) Code of Civil Procedure section 685.040 provides in relevant part: "Attorney's fees incurred in enforcing a judgment are included as costs collectible under this title *if the underlying judgment includes an award of attorney's fees* to the judgment creditor pursuant to subparagraph (A) of paragraph (10) of subdivision (a) of section 1033.5." (Italics added.) The emphasized language expresses an intent by the Legislature consistent with our construction of section 1036—prevailing plaintiffs are entitled to attorney fees in an enforcement of judgment action where, as here, the underlying judgment provides for such award. (*Imperial Bank v. Pim Electric, Inc.* (1995) 33 Cal.App.4th 540, 557-558 [39 Cal.Rptr.2d 432].)

Because section 1036 provides a statutory basis for an award of litigation expenses, we do not reach appellants' argument that an award is required by the stipulation.[5]

## DISPOSITION

The judgment of the trial court is reversed and the case remanded for an award of reasonable litigation expenses incurred in this action, including those incurred on appeal.

Coffee, J., and Perren, J., concurred.

---

[5]The Downens provide no argument or authority in their brief concerning the trial court's grant of the Agency's motion to tax costs for telecopier, telephone and photocopy expense. Therefore, this issue is waived and we do not decide it. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481].)