Opinion
RYLAARSDAM, J.
Defendants Orange County Development Agency, the County of Orange, and David E. Sundstrom appeal from a summary judgment ordering them to pay plaintiff Santa Ana Unified School District certain property tax revenues. Defendants contend plaintiff was required to elect to receive such funds, and failed to do so timely, thereby negating any right to allocation of the funds. Plaintiff argues, and the trial court agreed, that defendants’ allocation and payment of the funds were mandatory, making plaintiff’s election automatic. We affirm.
Facts
The facts in this case are simple and not in dispute. In 1986, defendants adopted the Santa Ana Heights Redevelopment Project (project) under the Community Redevelopment Act (Health & Saf. Code, § 33000 et seq.; all further statutory references are to this code unless otherwise stated). The project falls within plaintiff’s boundaries.
In 1996, plaintiff adopted a resolution electing to be paid its share of the annual 2 percent inflationary increase in property tax assessment revenues (2 percent tax) pursuant to section 33676. Defendants denied the request for lack of a timely election, maintaining that plaintiff was required to make such election before the project was adopted in 1986. In 1999, plaintiff filed a petition for writ of mandate to compel defendants to disburse the 2 percent tax funds to it from and after 1996.
Plaintiff filed a motion for summary judgment contending it was not required to adopt a formal election to receive the funds, but the 2 percent tax payment was automatically allocated to it because of its status as a school district. Defendants argued they had no duty to allocate the funds because plaintiff failed to make an election to receive the funds and then notify defendants before the project was adopted, as required under section 33676. The court granted plaintiff’s motion and entered judgment, ordering defendants to pay plaintiff not quite $90,000, the amount of the 2 percent fimds due plaintiff for 1996 through 2000, plus interest at 8 percent, and to pay *408 plaintiff’s share of the 2 percent increases thereafter until the project expired.
Discussion

Application of Section 33676

This case revolves around the meaning of section 33676. Before an amendment in 1984, the section provided that “[pjrior to the adoption by the legislative body of a redevelopment plan . . . any affected taxing agency may elect to be allocated ... all or any portion of the tax revenues . . . .” (Former § 33676, subd. (a), as amended by Stats. 1977, ch. 579, § 130, pp. 1878-1879.) The amended section contains the language at issue here: “Prior to the adoption by the legislative body of a redevelopment plan . . . any affected taxing agency may elect, and every school . . . district shall elect, to be allocated ... all or any portion of the tax revenues . . . .” (Former § 33676, subd. (a), Stats. 1984, ch. 147, § 15, p. 510, italics added.) Since 1984, the statute allows some taxing authorities, but requires plaintiff, to elect allocation of funds. (Ibid.)
Although defendants acknowledge plaintiff elected to receive the funds, they maintain that plaintiff failed to make the election prior to adoption of the redevelopment project as required by the statute. As a result, defendants assert, plaintiff lost the right to receive the funds.
Defendants argue the language of section 33676, subdivision (a) is clear on its face and required plaintiff to elect in a timely fashion to receive its portion of the 2 percent funds. They contend the court erred in engaging in any statutory construction of section 33676 because the legislative intent requiring such an election is clear from the words of the statute. Plaintiff maintains that the language of the statute required defendants to allocate the funds and plaintiff to accept them; therefore, election was not necessary. We agree that, notwithstanding the untimeliness of plaintiff’s election, the statute requires defendants to pay the funds and plaintiff to accept them.
We review statutory interpretation de novo. (Be v. Western Truck Exchange (1997) 55 Cal.App.4th 1139, 1143 [64 Cal.Rptr.2d 527].) Defendants are correct that when statutory language is clear and unambiguous, we need not construe its meaning. (Downen’s Inc. v. City of Hawaiian Gardens Development Agency (2001) 86 Cal.App.4th 856, 860 [103 Cal.Rptr.2d 644].) However, where the provisions of a statute are ambiguous or conflict, we must engage in statutory construction. (Ibid.) Our primary purpose is to determine the intent of the Legislature. (Curle v. Superior Court *409 (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].) To do so, we first examine the words of the statute itself, attributing the usual, ordinary, and commonsense meaning to them. (Dafonte v. Up-Right, Inc. (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].)
Defendants argue that section 33676 is unambiguous on its face. However, it would be only a slight exaggeration to characterize “shall elect” as an oxymoron requiring statutory construction. We are persuaded the section contains at least a latent ambiguity and is susceptible to more than one interpretation. Thus, “we look to a variety of extrinsic aids, including the statutory scheme of which the statute is a part, the legislative history, and the ostensible objects to be achieved.” (Praiser v. Biggs Unified School Dist. (2001) 87 Cal.App.4th 398, 401 [104 Cal.Rptr.2d 551], fn. omitted.)
Using defendants’ interpretation, the 1984 amendment to section 33676 would have had no effect. Prior to that amendment, the section provided that all taxing agencies, including a school district, had the option to elect to receive the funds. (Former § 33676, subd. (a), as amended by Stats. 1977, ch. 579, § 130, p. 1879.) The amended language at issue here removes plaintiff’s option to elect; it requires the election, reflecting the intent that school districts are to be paid the funds. “Where changes have been introduced to a statute by amendment it must be assumed that changes have a purpose; by substantially amending a statute the Legislature demonstrates an intent to change the preexisting law in all areas where there is a material change in the language of the act. [Citations.]” (Louisiana-Pacific Corp. v. Humboldt Bay Mun. Water Dist. (1982) 137 Cal.App.3d 152, 159 [186 Cal.Rptr. 833].) The Legislature is “not to be assumed to have amended the statute from mere caprice.” (Consolidated Rock Products Co. v. State of Cal. (1943) 57 Cal.App.2d 959, 967 [135 P.2d 699].)
Although arguing we should not consider legislative history, defendants point to language from the Legislative Counsel’s Digest “requiring schools to elect.” But the legislative history contains ample evidence that the Legislature intended payment of the 2 percent funds to school districts be mandatory. This evidence includes the requirement “that school districts keep the 2 percent property tax increase . . .” (Assem. Ways and Means Com., summary of Assem. Bill No. 203 (1983-1984 Reg. Sess.) as amended Jan. 18, 1984); “that K-14 school districts be allocated their share . . .” (Legis. Analyst, analysis of Assem. Bill No. 203 (1983-1984 Reg. Sess.) as amended Jan. 18, 1984, p. 5); and that “every affected taxing entity may elect, and every school . . . district shall elect, to receive . . .” (Assem. *410 Com. on Revenue and Taxation, Rep. on Assem. Bill No. 203 (1983-1984 Reg. Sess.) as amended Jan. 10, 1984, p. 5). It also includes the ability to “further protect the state by mandating receipt of this 2% by school districts []” (id. atp. 6); “allowing] each affected agency (and mandating] each school district) to receive . . .” (id. at p. 7); providing “that school districts shall be allocated this increase as a matter of law[]” (Legis. Analyst, Off. of Local Governmental Affairs, analysis of Assem. Bill No. 203 (1983-1984 Reg. Sess.), as amended Jan. 3, 1984, pp. 5-6); and “requiring] schools . . . to receive the 2% annual . . . increase . . .” (Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 203 (1983-1984 Reg. Sess.), as amended Jan. 25, 1984, p. 3). Other documents containing the same or virtually the same language include an updated Legislative Analyst’s Report, an analysis by the Senate Democratic Caucus, an analysis by the Assembly Department of Finance, and more. This history overwhelmingly attests to the Legislature’s intent in enacting the amendment: to require allocation of the 2 percent funds to school districts, regardless of timely election.
Defendant’s interpretation of the statute gives primary emphasis to the timing of the election, instead of the requirement that school districts receive the money. Where a statute is reasonably susceptible to two interpretations, we must embrace the one that best effectuates the legislative purpose. (Downen’s Inc. v. City of Hawaiian Gardens Development Agency, supra, 86 Cal.App.4th at p. 860.) “The legislative purpose will not be sacrificed to a literal construction of any part of the statute. [Citation.]” (Dowling v. Zimmerman (2001) 85 Cal.App.4th 1400, 1427 [103 Cal.Rptr.2d 174].)
The overarching purpose of the amendment to section 33676 was to ensure that school districts receive the 2 percent funds. Election was a means of accomplishing the payment, but it was not part of the amendment. The election provision, albeit permissive rather than mandatory, was part of the prior version of the statute. The change from permissive to mandatory election only reinforces the conclusion that the Legislature’s objective was to require that the funds be paid. “[Ojnce a particular legislative intent has been ascertained, it must be given effect even though it may not be consistent with the strict letter of the statute. [Citations.]” (Kagy v. Napa State Hospital (1994) 28 Cal.App.4th 1, 6 [33 Cal.Rptr.2d 741].) Thus, while the literal words of the statute require election, we defer to the Legislature’s intent, which is to have the 2 percent funds paid to school districts.
Amici curiae California Redevelopment Association and the Manteca Redevelopment Agency (collectively CRA) rely on an even later *411 amendment of section 33676 in arguing timely election was required. We are not persuaded.
In enacting Assembly Bill No. 1290 (1993-1994 Reg. Sess.) (a 1993 amendment to the statute), the Legislature removed all “elect” language relating to school districts and amended the statute to read that “any affected tax agency may elect to be allocated, and every school district. . . shall be allocated . . . .” (Stats. 1993, ch. 942, § 34, p. 5378, italics added.) This amendment bolsters our interpretation of the statute. “We assume the Legislature amends a statute for a purpose, but that purpose need not necessarily be to change the law. [Citation.] Our consideration of the surrounding circumstances can indicate that the Legislature made . . . changes in statutory language in an effort only to clarify a statute’s true meaning. [Citations.]” (Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507].) This amendment did eliminate school districts’ option to elect, but it did not eliminate any requirement to pay the 2 percent funds. Instead it mandated their allocation, as did the previous version of the section. This was a clarification of the statute’s true intent: mandatory payment of the funds to school districts.

Laches and Estoppel

Defendants claim the court erred by failing to hear an argument on their laches defense at the summary judgment hearing. CRA asserts the “incredible unfairness” of the judgment because it “upsets [defendants’] financial apple cart.” We disagree.
As the moving party, plaintiff had the initial burden to show it was entitled to judgment. (Code Civ. Proc., § 437c, subd. (o)(1).) Contrary to what defendants appear to argue, this burden did not include disproving defendants’ affirmative defenses. (Ibid.) Once plaintiff met its initial burden, the burden shifted to defendants to produce admissible evidence showing a triable issue of fact. (Code Civ. Proc., § 437c, subd. (o)(2); Green v. Ralee Engineering Co. (1998) 19 Cal.4th 66, 72 [78 Cal.Rptr.2d 16, 960 P.2d 1046].) A party may not rely on defenses in pleadings without evidence to support them. (Code Civ. Proc., § 437c, subd. (o)(2); Sangster v. Paetkau (1998) 68 Cal.App.4th 151, 162 [80 Cal.Rptr.2d 66].)
Defendants failed to produce any evidence as to laches in their opposition papers. It was not sufficient to raise it for the first time at the hearing, and the court was under no obligation to continue the hearing to allow defendants to produce such evidence. Likewise, no evidence supporting the alleged impairment of defendants’ contracts with bondholders was proffered in *412 opposition to the motion for summary judgment. We cannot consider any issues not factually presented in the trial court. (American Continental Ins. Co. v. C & Z Timber Co. (1987) 195 Cal.App.3d 1271, 1281 [241 Cal.Rptr. 466].) CRA requested we take judicial notice of certain records of the State Controller and the Community Redevelopment Agencies Annual Report for fiscal year 1998-1999, and also submitted a declaration interpreting the data. Without deciding the request, none of the information provided has a bearing on our determination, and it was not considered. Defendants filed a reply to plaintiff’s response to an amicus curiae brief. Plaintiff objected on the ground our order authorizing the filing of the amicus curiae briefs did not provide for filing of a reply. We have the discretion to review the brief and did so.
Disposition
The judgment is affirmed. The request for judicial notice is denied. Respondent’s objection to appellants’ brief is overruled. Respondent shall recover its costs on appeal.
Sills, P. J., and Beds worth, J., concurred.
Appellants’ petition for review by the Supreme Court was denied September 19, 2001. Chin, J., did not participate therein.